# RUTHERFORD'S ADM'RS v. BR. BANK AT MOBILE.

1. A claim against an insolvent estate is sufficiently filed, if presented to the clerk for the purpose, though he omits to file it.

2. It is not necessary to file the note, or bond, or other evidence of a claim against an insolvent estate, but a copy, or substantial statement of the claim will be sufficient.

3. It is not necessary that the affidavit which the statute authorizes the administrator to require, should be made when the claim is filed; it will be sufficient if made at the time of the final settlement.

Rutherford's adm'rs v. Br. Bank at Mobile.

4. A letter written by a witness to another person, (not a party to the suit,) and his answer to it, may be looked to by the witness for the purpose of refreshing his memory as to the facts there stated; but the letters themselves, cannot be introduced as instruments of evidence.

5. When the creditor has filed a claim against an insolvent estate of a surety, if whilst the claim is pending, the debt is paid by a co-surety, the judgment of the creditor on his claim, would not be for the whole amount, but would be reduced to the amount which the surety who had paid the debt, would have the right to demand for contribution; the creditor being permitted to obtain the judgment, for the benefit of the co-surety.

Error to the Orphans' Court of Dallas.

On the final settlement of the estate of William Rutherford, deceased, which had been declared insolvent on the 14th day of July, 1845, the defendant in error presented for allowance, as a claim as against said estate, a note made by William Bower, William Rutherford, John J. Greening, and H. W. Coleman, dated 10th December, 1842, payable twelve months after date, to B. Gayle, cashier, or bearer, for $19,-899 44, with interest from date, negotiable and payable at said Branch Bank; said note was filed as the property of the bank, but at the time of the trial, was the property of Edw. Watts, Abner L. Coleman, and Todd. On the 9th day of March, 1846, the administrators of said estate, Norris and Lapsley, filed their objections to the allowance of said claim :

1. Because the said note was not verified by affidavit, as required by the statute.

2. Because the note was not filed in the office of the clerk of the county court of Dallas county, within the time prescribed by law.

3. Because the note was not the note of the said Rutherford, nor signed by him.

To try the objection that the note was not signed by Rutherford, a jury was empannelled, who returned a verdict, that the note was executed by the deceased. During the progress of the trial, Mr. Burr was examined as a witness, who testified, that in November, 1845, he took the note to the clerk's office, having received it from the bank, and informed the

clerk he wished to file it, and requested the clerk to make a copy of it. That the clerk replied he was too busy to attend to it at that moment. The witness inquired of the clerk where the papers of the estate were, and being directed to a desk, he found the other claims filed against said estate, and he put the note in controversy amongst them, informing the clerk that he would have to take the note out, and that he would call for a copy at another time. That shortly afterwards, the witness applied to the judge of the orphans' court for an order to withdraw the note, on leaving a copy of it. The judge consented, but did not go to the office, and directed the witness to enter the order on the judge's docket, or memorandum book, from which the clerk could make the entry on the minutes. The witness did so, and made a memorandum, or order on the memorandum book, which however was not transferred to the minutes. About the 5th of December, 1845, the witness requested the deputy clerk to make out a copy, which he did, and the original note was withdrawn, and the copy kept with the papers of said estate. The note was remitted to Mobile, where a suit was pending against the parties thereto, and was not returned until about the 2d of Feb'y, 1846, when it was returned to the orphans' court. On said note were these indorsements, in the hand-writing of the clerk, now dead: Copy of this note filed in office this 5th December, 1846, and note filed 2d February, 1846. The claimant also produced a book, in which the claims filed against said estate were entered, and the following entry appeared in reference to this note: Filed 5th December, 1845, but this entry was in reference to the copy filed, and not the original note.

The bank also offered the affidavit of Henry B. Holcombe, cashier of the bank, bearing date the 30th day of May, 1846, which stated that the note was *bona fide* the property of the bank, and is still due, except the credits thereon indorsed, and the sum of $1,745 36, made from the sale of property of William Bower. The affidavit then goes on to specify this with other notes held by the bank against the decedent, which had been prosecuted as claims against said estate. There was no other affidavit in relation to said claim, and

the administrators objected to the admission of said affidavit, which objection was overruled.

On the trial of the issue of the making of the note by the intestate, the bank introduced William Bower as a witness, but he was objected to because he was a joint maker of the note. The note was executed by Bower as principal, and by the other makers thereof as his sureties. The court permitted Bower to testify, and the administrators excepted.

The witness testified, that it was doubtful whether the signature of the deceased to the note, was in the hand-writing of the witness, or of Rutherford. That the deceased, and the witness were brothers-in-law, that their business transactions were of the most intimate character, and that he had unlimited authority to sign the name of the deceased, and had frequently done so. That in relation to this particular note, he had sent it up from Mobile to Rutherford, in a letter, requesting him to sign it, and to get Mr. Coleman to sign it, and to send it to Messrs. Perrine & Crocheron, at Cahawba. That he afterwards received said note from Coleman, with all the signatures to it. That from this, and also from letters received from Coleman, Perrine, and Crocheron, he believed that the note, when it left Mobile, had his name only, and when it was returned it had the names of all the parties to it—he also produced a letter from Rutherford, in which he stated, I have received the note you sent me, and have lost no time in sending it to Mr. Coleman, to the care of Perrine and Crocheron.

The bank also introduced a witness, Mr. Perrine, who stated, that he received a letter from the witness Bower, in which there is a postcript, as follows : "I have requested Col. Rutherford to send to your care a letter, directed to A. W. Coleman, and I must request you to send the letter to Centre Point, as soon as you can." Bower testified he wrote such a letter in reference to the note, and Perrine testified that he received it. This was in May, 1842. Perrine also stated, that in a few days afterwards he received a letter from said Rutherford, directed to Coleman, and which had been delivered as requested. Bower also testified that he had received, and the said Perrine that he had written a letter, about the same time, to wit, about the 7th day of June, 1842, in which

the following passage occurs: "The letter forwarded by Major Rutherford, to Mr. Coleman, was handed to him yesterday, and that the fact was as stated in said letter." To the reading of which letters the administrators objected, but the objection was overruled by the court. There was a number of witnesses examined, who differed in opinion, whether the note was signed by Bower, or by Rutherford. It seems from the record, that upon the rendition of the verdict, nothing more was done until the May term of said court, when the bank offering said note for allowance as a claim against said estate, the administrators filed an affidavit, that since the trial of the issue in this case, they have discovered that the note had been paid in full, or nearly so, to the bank, by the sale of A. W. Coleman's property. That these facts were unknown to the administrators at the time of trying the issue aforesaid, and they believe they can be proved by the record of the judgment, and the executions thereon issued. Upon the filing of this affidavit, the administrators offered to file the following plea: "That said claim ought not to be allowed, because they say, that since the filing of said claim in this court, and since the exceptions thereto were filed, said claim has been fully paid and satisfied, wherefore they pray that said claim be rejected;" which plea was sworn to, and offered to be filed, but the court, on objections made, would not permit said plea to be filed, and the administrators excepted.

The administrators then offered to prove, that the note had been paid to the claimant, but the court rejected the evidence, and on the motion of the bank, the note was allowed as a claim against said estate.

The administrators here assign for error, in allowing said note as a claim against the estate—

1. The claim should have been rejected, because it was not filed in the office of the clerk of the orphans' court within the time prescribed by law.

2. The affidavit required by law is insufficient, and came in too late.

3. The court erred in permitting the extracts of the letters to be read as evidence.

4. The court erred in rejecting the plea of payment, and

also in rejecting the proof of payment made to the bank after the filing of the claim.

J. W. LAPSLEY and WM. H. FELLOWS, for plaintiffs in error.

1. The claim should have been rejected, on the ground that it was not properly filed. Clay's Dig. 194, § 10. The *note* should have been in the office of the clerk and remained there, subject to the inspection of the administrators and other creditors; otherwise the reason for directing the filing of the claim would be inoperative.

2. The affidavit was insufficient, and came too late. Clay's Dig. 194, § 11, 12; Hollinger v. Holley, 8 Ala. Rep. 454; Brown v. Easley, 10 Ala. R. 564. The estate was declared insolvent 14th July, 1845; the time for filing expired on the 14th January, 1846; the note was not filed until February, 1846; the affidavit was not filed until the month of May, 1847; the exceptions were taken in March, 1846. About twenty-two months had expired after the estate was declared insolvent before the affidavit was filed. Under the statute, the longest time allowed for the settlement of the estate was twelve months. Clay's Digest, 194, § 12. The affidavit should at all events have been filed within the time prescribed for settlement. Brown v. Easley, 10 Ala. R. 564.

3. That the court erred in admitting the letters and parts of letters, as shown by the bill of exceptions. Vastbinder v. Metcalf, 3 Ala. R. 100; 1 Starkie on Ev. 40, § 41; 4 Ibid. 1300; Bailey v. Wakeman, 2 Denio's Rep. 220.

4. There was error in rejecting the plea of payment. If, however, the filing of the plea was a matter of discretion with the court, the proof of payment was good without a special plea; and there was certainly error in rejecting the evidence. McMillan v. Wallace, 3 Stewart, 185; Herkimer Manuf. Co. v. Small, 21 Wend. 277, 278.

5. It is shown by the affidavit of the assistant commissioner of the bank, that the claim is entitled to several credits, the largest of which does not appear to have been indorsed on the note. Nor does it appear that any of these credits were allowed in rendering the decree. The decree is for no specific amount, and so far as appears, the entire

13

amount of the note was allowed. Under this view of the
case, the decree as rendered is clearly erroneous.

EVANS, contra.

1. The proof in the cause is conclusive to establish that
the original of the claim was filed in due form, and if other-
wise, the filing of the copy, about which there is no contro-
versy, will satisfy the requisition of the statute. It is the
claim, not the evidence of the claim, which the statute re-
quires to be filed. Clay's Dig. 194, § 10. There is no mode
of filing prescribed, further than the person having any
claim, "shall file the same in the clerk's office." If the per-
son having such claim "shall file the same in the clerk's of-
fice," his rights cannot be defeated by the neglect of the
clerk to make the indorsement or give receipt. This is di-
rectory merely to the clerk, and his omission to obey these
directions cannot prejudice the claimant. But in this case,
the clerk did indorse on the claim, and his docket shows it
was filed 5th December, 1845, several months anterior to the
time limited for filing. Gaffney v. Williamson, adm'r, 12
Ala. Rep. 628. The placing the claim among the papers of
the estate was an unequivocal act of filing, which the clerk
cannot be allowed to contradict. Per Ormond, J., in Gaffney
v. Williamson, *supra.*

2. The affidavit was in sufficient time. Hollinger v. Hol-
ley, 8 Ala. 454; Shortridge v. Easley, adm'r, 10 Id. 520;
Brown & Co. v. Easley, adm'r, Ib. 564; Brashear and A. R.
Gooch, adm'rs, v. Lyle and House, at this term. No objec-
tion was made to the form or substance of the affidavit, or of
the competency of the affiant to make it, nor in fact do the
administrators specify any particular objection. The court
will promptly overrule undefined objections to the admission
of evidence, if the party will not particularize the grounds.
Wallis v. Rhea & Ross, 10 Ala. 451. The assistant com-
missioner, from the nature and duties of his office, was the
proper person to make the affidavit.

3. The third assignment of error questions the competency
of the witness Bower to testify. The witness, as the record
shows, was principal in the note, and he has no interest in
the event of the suit which would disqualify him. 2 Phil.,

C. & H.'s Notes, 132; Ib. 132-3; Hubbard v. Brown, 16 Johns. 70, and numerous cases there referred to; 1 Phillips's Ev. 67; Standifer v. Chisolm, 1 S. & P. 449; Hallet and Walker, ex'r, v. O'Brien, 3 Ala. 455; Lockett v. Child, 11 Ala. 640; 3 Phillips's Ev. 1543; Thompson v. Armstrong, 3 Ala. 383.

4. The witnesses testified to the facts independent of the letters. There could be no error in this. The testimony is, that certain facts existed at the time referred to—that they were communicated by letter, and were true. 2 Phillips's Ev. 593.

5. The fifth assignment of error relates to the rejection of what the defendants denominate their plea of payment.

DARGAN, J.—The first question presented by the assignment of errors, is, was the claim filed in the office of the clerk of the orphans' court, within the time prescribed by law?

By the act of 1843, every person having a claim against an insolvent estate shall file the same in the office of the clerk, within six months after the estate is declared insolvent. On the 14th day of July, 1845, the estate of Rutherford was declared insolvent, and in November, 1845, the note was presented to the clerk by the attorney of the bank, who stated that he wished then to file it, as a claim against said estate. The clerk being then busy, said he could not then attend to it. The attorney inquired of him where the papers relating to the estate were, and being informed that they were in a desk, he left the note with the other claims filed against said estate. In December, the attorney of the bank applied to withdraw the original note, and to leave a copy, as there was a suit pending in Mobile against the other parties to the note; a copy of the note was made out and left with the clerk, who then noted the claim as filed. The original note was withdrawn and sent to Mobile, and was returned to the office of the clerk of the orphans' court in February, 1846. Even if it were necessary, that the original note or bond should be filed with the clerk, we should hold that this claim was filed within the time prescribed by the statute. It was presented to the clerk in November, for the purpose of having it filed,

and the clerk being engaged, it was left in his office amongst the papers of the estate : this was in November, and although the clerk did not enter it on his book as filed, this omission of the clerk cannot prejudice the claimant.   See the case of Gaffney v. Williamson's ex'rs, 12 Ala. 628.

But we do not think that it is necessary that the note or bond itself should be filed in the office of the clerk; but a copy of it, or a substantial statement of the claim filed in the office of the clerk, we think a compliance with the statute. The statute of 1815, in reference to estates, requires that all claims shall be presented to the administrator, or executor, within eighteen months; yet it has never been held, that the note, or bond, or other evidence of the claim should be presented, but on the contrary a copy, or a substantial statement of the claim, showing its character and extent, has always been deemed sufficient.   See the case of Hunly v. Shuford, 11 Ala. Rep. 203; 1 Porter, 374; and the case of the Executors of Hutchins v. The Branch Bank at Decatur, 12 Ala. Rep. 802.

It is true, that by the same section of the act, the clerk is required to give receipts for claims thus filed, but we cannot infer from this, that it was the intention of the legislature, that unless the original note or bond was filed with the clerk, that the claim should be rejected.   Suppose the claim could be established only by parol proof, or the bond or note was lost, it would be admitted, that a statement of the character and extent of the claim, would be all that could be required.   And to construe this act, so as to require that the note or bond itself should be filed with the clerk, within the six months, would often lead to great inconvenience, as it might be required as evidence in another action against other parties to it.   Under this view, we think the claim was properly filed, even if the original note had not been filed with the clerk, in November, 1845, as in December a copy of the note was made out, and left with the clerk, and he then noted the claim as filed against said estate.

2. The next question presented, is, whether the affidavit was made and filed within the proper time.

The claim must be verified by the affidavit of the claimant.   The administrator, or the creditors, can insist on the

claimant's making affidavit to the justice of his claim, but it is not necessary that the affidavit shall be made at the time the claim is filed with the clerk. See Brown v. Easley, adm'r, 10 Ala. Rep. 564. But if the claim is objected to for the want of an affidavit, the claimant must make the affidavit, or the claim will be rejected. But as the affidavit need not be made within the six months, but may be made afterwards, according to the construction given to this act by this court, we can see no reason why the claim snould be rejected if the affidavit is made at the time of making the final settlement. The object of this portion of the act was, to give the administrator, or the creditors, the right to demand of the claimant his oath, or affidavit that his claim is just, and if this is done at the time of the final settlement, the object of the statute is complied with. See the Administrators of Rutherford v. Goldsby, *supra*.

The next question presented by the plaintiffs in error, questions the propriety of the action of the orphans' court in permitting the extracts of the letters, the one written by Bower to Perrine & Crocheron, and the one by Perrine & Crocheron to Bower, to be read to the jury, as evidence on the trial of the issue of *non est factum*. Perrine testified, that he had received, about the 28th May, 1842, a letter from Bower, the witness, containing a postcript to the effect following : " I have requested Col. Wm. Rutherford to send a letter to your care, directed to A. W. Coleman, and I must request you to send the letter to Centreport, so that he can get it as soon as possible after you receive it ; perhaps you may have an opportunity of sending it to him direct to Warrenton." The extract of the letter from Perrine *&* Crocheron to Bower, was in these words : " The letter forwarded by Col. Rutherford for A. Coleman, was handed to him on yesterday." Bower testified that these letters had reference to the note in controversy, yet the note bears date in December, 1842, and the letters bear date, the one written by Bower in May, the other, written by Perrine & Crocheron in June, 1842.

We are not able to perceive upon what principle these letters, or the extracts of them, can be received as evidence. The witness, Bower, might look at them as written memo-

randa, by which his memory might be refreshed as to any particular fact. But they were not written by Rutherford, nor to Rutherford, but were written by the witnesses to each other. They form no part of the contract, nor are they any part of the *res gestae.* We think, therefore, the court erred in permitting these extracts of the letters to go to the jury as evidence. In the case of Vastbinder v. Metcalf, 3 Ala. 100, the action was for use and occupation. The plaintiff introduced a lease, which was not signed by either of the parties, and proved by the person who wrote it, that it was the agreement under which the leasing was mode. This court held, that though the witness might have looked at the writing to refresh his recollection as to the facts, yet the writing itself was not evidence.

· These letters can amount to nothing more than mere declarations made by the witnesses to each other, and cannot be received as evidence of the contract, òr of the execution of the note by the decedent.

As this testimony was illegal, we must reverse the decree of the orphans' court allowing the claim, although there may have been testimony sufficient to justify the jury in finding a verdict that the note was executed by the intestate, for we cannot ascertain what influence this testimony had upon the jury in coming to their conclusion.

The last question raised by the plaintiff in error is, that the court erred in rejecting the plea, that the note had been paid to the bank by one of the co-sureties, since the claim was filed, and also in rejecting the proof tending to show this fact.

The bank had the right to proceed to make the money out of the other sureties, notwithstanding their claim was filed in the orphans' court, against the insolvent estate of another surety—and if the money was paid by a co-surety, after the estate was declared insolvent, and after the claim was filed by the bank, we see no good reason why the bank may not be permitted to prosecute the claim for the benefit of the surety who has paid the debt.

But the court should have received evidence to show, if

indeed the facts are so, that the debt had been paid by a co-surety, for if it had been so paid, after the claim was filed by the bank, then the amount of the claim would not be governed exclusively by the amount of the note, but would be reduced to the amount that the surety who had paid the debt would have the right to demand for contribution, and the court should allow this claim to the extent of the co-surety's right of contribution, and not to the extent of the whole amount of the debt.

Let the decree be reversed, and the cause remanded.