# McKinstry *v.* City of Tuscaloosa.

## *Violating Municipal Ordinance.*

(Decided June 30, 1910. Rehearing denied Feb. 1, 1911.
54 South. 629.)

1. *Municipal Corporations; Ordinances; Violation; Prosecution.*— While one accused of violating a municipal ordinance is entitled to be apprised by written complaint of the nature and character of the proceedings instituted against him in the municipal court, yet if he proceeds to trial without demanding in such court such complaint, he waives the right thereto, and cannot avail of it for the first time on appeal.

2. *Same.*—The character of a prosecution by a municipality for the violation of a municipal ordinance is not changed from quasi criminal only to criminal by the Municipal Code Act. (Acts 1907, p. 700, Secs. 1046-1460, Code 1907) since section 1215 in terms recognizes that the jurisdiction conferred on recorders comprehends matters quasi criminal, which term, when employed in municipal enactments can have reference only to prosecution for violations of municipal ordinance, and section 1451, merely provides that an ap-

[McKinstry v. City of Tuscaloosa.]

peal from a conviction for the violation of such ordinance shall be governed in all respects by the laws regulating appeals from justices of the peace in criminal cases; sections 1218 and 1222, affording no inference of such a change in the character of such proceeding.

3. *Witnesses; Competency; Sanity.*—The testimony of a lunatic or idiot may be received if he appears to understand and comprehend the obligation of an oath, and to be able to give correct answers to questions.

4. *Same; Determined by Court.*—The determination of the competency of a witness assailed as a moral imbecile is for the court to be judged from his appearance, demeanor and statements.

5. *Charge of Court; Testimony of One Witness.*—Where there is other evidence tending to establish guilt, a charge which hinges the conclusion of guilt on the testimony of one witness is properly refused.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Susie McKinstry was convicted of violating an ordinance of the City of Tuscaloosa and she appeals. Affirmed.

VAN DE GRAAFF & SPROTT, for appellant. This is a purely criminal action and is governed by the constitution and laws of the State with reference to criminal prosecutions.—*Arzumanian v. City of Birmingham*, 51 South. 645; *Barron v. City of Anniston*, 157 Ala. 399; *City of Selma v. Shivers,* 160 Ala. 505; Crim. Code, Secs. 6700, 6703; Pol. Code, Secs. 1215-1222, incl.; Pol. Code, Sec. 1451; Const., Sec. 170. The mayor's court was without authority of law to try defendant without an affidavit or a formal complaint on oath.—*Arzumanian v. City of Birmingham*, 51 South. 645; Crim. Code 6703; Pol. Code 1215-1222 incl.; Const., Secs. 6, 7, and 8; *Wiley v. State,* 117 Ala. 158; *Drake v. State,* 68 Ala. 310; *Cross v. State,* 117 Ala. 73; *Miles v. State,* 94 Ala. 106; *Butler v. State,* 130 Ala. 127; *Monroe v. State,* 137 Ala. 88; *Bates v. State,* 44 South. 695; *Ex parte McCluckey,* 40 Fed. Rep. 71; *Ex parte Bain,* 121 U. S. 1; 12 Cyc. pp. 321, 323, 329; *Goldsmith v. Huntsville,* 120

Ala. 188; *Camden v. Bloch,* 65 Ala. 236. A judgment of conviction rendered on the unsworn complaint in this case is void because there is nothing to support it; it is absolutely without foundation.—*Arzumanian v. City of B'ham,* 51 South. 645; Crim. Code 6703; Pol. Code 1215-1222; Const. Sec. 6, 7 and 8; *Ex parte Mc-Cluckey,* 40 Fed. Rep. 71; *Ex parte Bain,* 121 U. S. 1; *Wiley v. State,* 117 Ala. 158; *Drake v. State,* 68 Ala. 310; *Cross v. State,* 117 Ala. 73; *Miles v. State,* 94 Ala. 106; *Monroe v. State,* 137 Ala. 88; *Butler v. State,* 130 Ala. 127. A formal complaint being a prerequisite could not be waived by the defendant.—Citations same as Prop. 3 and 12 Cyc. 816; 22 Cyc. 39, 173; *Martin v. State,* 62 Ala. 242. The appearance of the defendant was not voluntary and therefore constituted no waiver of an affidavit or complaint.—12 Cyc. 228; *Brosde v. Sanderson,* 86 Wis. 368 (57 N. W. 49). The court erred in permitting witness Dave Freeman to testify.— Jones on Evidence, p. 897, Sec. 719 et seq.; *Worthington v. Mencer,* 96 Ala. 310; *Dist. of Col. v. Ames,* 107 U. S. 519.

SOMERVILLE & CLARKSON, for appellee. Defendant not having raised the objections to the absence of affidavit or warrant in the Mayor's Court, but having there voluntarily appeared to answer the charge, and having pleaded and gone to trial without objection, the defendant waived the objections and could not raise them for the first time in the County Court on appeal.—*Aderhold v. Mayor and Aldermen of Anniston,* 99 Ala. 521; *Blakenshire v. State* 70 Ala. 10; *Mayor and Aldermen of Birmingham v. O'Hearn,* 149 Ala. 307. There was no error in allowing witness Dave Freeman to testify. —Jones on Evidence Par. 719 and 723, and cases there cited.

[McKinstry v. City of Tuscaloosa.]

McCLELLAN, J.—A party accused of a violation of a municipal ordinance is entitled in the municipal court "to be apprised of the nature and character of the proceeding instituted against him by a written complaint."—*Mayor and Aldermen of Birmingham v. O'Hearn,* 149 Ala. 307, 42 South. 836. But, if one so accused proceed to trial without demanding, in the municipal court, a written complaint, setting forth the accusation against him, he must be held to have waived the right and cannot for the first time avail of it on appeal.—*Aderhold v. Anniston City,* 99 Ala. 521, 12 South. 472; *Mayor and Aldermen v. O'Hearn, supra.* The more recent decisions delivered here in *Arzumanian v. City of Birmingham,* 165 Ala. 374, 51 South. 645; *City of Selma v. Shivers,* 150 Ala. 502, 43 South. 565, and *Barron v. City of Anniston,* 157 Ala. 399, 48 South. 58, did not depart from the rule of waiver before stated. The record before this court in Arzumanian's appeal left it entirely uncertain whether he was proceeded against as for a violation of a municipal ordinance or of a state statute. So that in the state of that record the question of waiver of the right to a written accusation as for a violation of a municipal ordinance was not taken or involved. In Shivers' appeal an affidavit was made. The inquiry of waiver, with which this appeal is concerned, was not reckoned with by this court in determining that appeal. The opinion in Shivers' appeal well declares that the prosecution was quasi criminal only. Barron's appeal declared and applied rules of evidence applicable to criminal cases, and so held that the measure of proof to justify a conviction, where imprisonment or hard labor was the penalty, to be that guilt be established beyond a reasonable doubt, and that the wife of the accused husband was incompetent as a witness in his behalf.

Whatever may be the conceived basis of argument that such prosecutions are criminal prosecutions, laid in the Shivers and Barron Cases, it has not been here ruled that such is the character of prosecutions for violations of municipal ordinances. If it were ruled that such prosecutions were criminal, the result would be the express repudiation of the doctrine underlying the pronouncements made in *Mayor v. Allaire*, 14 Ala. 400. Reference to Sheppard's Annotations (to our reports) will sow the frequency with which that decision has been since accepted as sound. Furthermore, if such prosecutions should be held to be criminal, it does not appear how a refusal to apply to such prosecutions all constitutional and statutory provisions applicable to criminal prosecutions for offenses against the penal laws of the state could be justified. So far as the state of decisions by this court on the matter is concerned, the doctrine is that such prosecutions are quasi criminal only. Has the Municipal Code (Acts 1907, p. 790, et seq., copied in the Political Code, c. 32) changed the character of such prosecutions from quasi criminal only to criminal prosecutions? Counsel for appellant insist that that result has been effected. In support of their contentions sections 60 and 68, inclusive, of the Municipal Code (Pol. Code 1907, §§ 1215-1222, inclusive), and section 1451 of the Political Code (1907), are cited in brief.

Section 60 of the Municipal Code deals with the jurisdiction, powers, and duties of the recorder, and in terms recognizes that the jurisdiction conferred comprehends matters quasi criminal. The term "quasi criminal" has or could have when employed in municipal enactments reference only to prosecutions for violations of municipal ordinances. Such has for more than 50 years been the meaning and reference of the

term.   That criminal jurisdiction, such as ex officio
justices of the peace have, was conferred, obviously em-
phasizes the legislative intent not to radically change
the character of municipal prosecutions from quasi
criminal to criminal proceedings, but, on the contrary,
evinces a clear purpose to observe and retain the dis-
tinction in nature between them.   That the prescribed
method of procedure on appeals from convictions for
violations of municipal ordinances is that pursued in
the trial of criminal cases appealed from the judg-
ments of justices of the peace (Code, § 1451) does not
change the character of the proceeding itself from quasi
criminal to criminal.   The effect of the statute is to as-
similate to the trial of offenders against municipal or-
dinances the procedure in criminal appeals from jus-
tice's courts.   Section 64 (Code, § 1218) consists with
the indicated assimilated mode of procedure on ap-
peals.   Sections 67 and 68 treat of the recorder's juris-
diction, of the bar of further prosecution for the un-
lawful act of which a conviction is had, and of the fines
and punishments to be imposed.   It is not written in
them, nor are the provisions thereof susceptible of af-
fording an inference, that such prosecutions are crim-
inal, and not quasi criminal only.   The nature and char-
acter of a prosecution for a municipal offense is now,
as it has always been in this state, a quasi criminal pro-
ceeding only.   Hence constitutional and statutory pro-
visions, otherwise than the before-stated assimilation in
matters of procedure has been effected, having reference
to criminal prosecutions by the state, are not applica-
ble to the violation of municipal ordinances.   It there-
fore follows that the court below did not err in respect
of its rulings on the pleadings wherein questions of ju-
risdiction were involved.   The failure of the defendant
to demand in the municipal court a complaint stating

the accusation against him precluded him from assert-
ing its absence on appeal.

The competency of Dave Freeman as a witness for
the municipality was assailed on the grounds that he
was a "moral imbecile," was incapable of separating,
in statement, truth from falsehood, and could not ap-
preciate the obligation of an oath. It was shown that
some years before he had been in custody at the Hos-
pital for the Insane. After taking testimony of an ex-
pert personally familiar. with the witness' mental state
before and about the time of the trial, who testified in
support of the grounds of objection indicated, and, on
the other hand, after hearing a partial examination of
Freeman, and after an examination of him by the court
and its evident opportunity of observing his appear-
ance, manner, and mode of statement, the court ruled
him to be a competent witness. We cannot pronounce
the conclusion in affirming the competency of the wit-
ness erroneous. The rule is that the testimony of an
idiot or a lunatic may be received "if he appears to have
sufficient understanding to comprehend the obligation
of an oath, and to be able to give correct (not necessar-
ily ore tenus) answers to questions put."—Jones on
Ev. §§ 719, 723; *Worthington v. Mencer*, 96 Ala. 310, 11
South. 72, 17 L. R. A. 407. The determination of the
inquiry of competency vel non was for the court.—
Author, supra. The appearance and demeanor of and
the statements made by the proffered witness may have
reasonably satisfied the court of his possession of the
requisite intelligence and ability to communicate his
responses to questions within the rule stated.

Charges 1 and 2 were well refused. They each would
hinge the conclusion of guilt upon the testimony of one
witness examined on the trial, whereas there was other
evidence tending to establish guilt.

[McKinstry v. City of Tuscaloosa.]

There is no error in the record. The judgment is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, and SAYRE, JJ., concur.

MAYFIELD, J.—(Dissenting.)—I am constrained to believe that the majority opinion is wrong because in my opinion it is grounded on two false premises: The first is that the accused was prosecuted and convicted of the offense of violating a municipal ordinance; and the second that she could and did waive her right to demand the process which the Constitution and statutes require to support a judgment of conviction in criminal cases.

One of the vexed questions which has perplexed the courts of this country, as well as the text-writers on constitutional, criminal, and municipal laws, is whether a single given act or transaction can be made to constitute two offenses, one against a municipal ordinance or by-law and the other against the general criminal statutes of the state. To state the proposition differently, can the same act or transaction be made two offenses, and be twice punished, once under a valid municipal ordinance, and once under the general criminal statutes of the state? It is said by Mr. Dillon that the cases and authorities on this subject are at variance. Some hold that the same offense may be a double one —one as against the peace and dignity of the state, and the other against the good order of the municipality. Others regard the act as constituting but one offense, holding it to be punishable but once, and that by the tribunal which first acquires jurisdiction. Mr. Justice Cooley says that the decisions are not uniform on this

question, but that the weight of authority is that the same act may constitute both an offense against the state and the one against the municipality, and that both may be punished without a violation of any constitutional right or principle.—Cooley on Const. Lim. 199.

Alabama is among the states which have held that offenses against the municipality and offenses against the state are distinguishable and disconnected, and that prosecutions for the two classes proceed upon different hypotheses—the one contemplating the conservation of the peace and the good order of the city, and the other (a more enlarged object) the maintenance of the peace and dignity of the state.—*Mobile v. Rouse,* 8 Ala. 515; *Mobile v. Allaire,* 14 Ala. 400; *Moore v. State,* 16 Ala. 411; *Greensboro v. Mullins,* 13 Ala. 341. So it has been held in this state that one of the proceedings is to be treated as a mere police regulation, for the enforcement of good order and quietude within the limits of the corporation; while the other is one to punish an offense against the criminal laws of the country. As is pointed out by Mr. Dillon and Mr. Cooley and other constitutional and municipal writers, this condition of the law on this subject led to embarrassment, confusion, and consternation, and often resulted in depriving the citizen of his constitutional guaranty of liberty. Our Constitution makers and Legislatures have sought to avoid this, and to this end a proviso has been added to section 8 of the Bill of Rights of 1901, authorizing the Legislature to dispense with grand juries and to provide for prosecution and proceedings, as for all misdemeanors, before justices of the peace or such other inferior courts as may be by law established. This proviso appeared for the first time in the Constitution of 1865, and, in order to give it effect, the Legislature

adopted the Penal Code of 1866, which conferred juris-
diction upon justices of the peace for final trial of cer-
tain misdemeanors without indictment, and created in-
ferior courts, denominated county courts, and invested
them with power and jurisdiction to prosecute all mis-
demeanors upon affidavit and complaint, thus dispens-
ing with the necessity of a grand jury or indictment
in such cases. That Code also provided forms and pre-
scribed rules and regulations for the making of the af-
fidavit or complaint, the basis of prosecutions for mis-
demeanors in such inferior courts, which was in lieu of
the indictment theretofore required by the Constitu-
tion. This system of criminal proceedings has been ad-
hered to ever since first inaugurated in 1866 though it
has been enlarged by subsequent acts of the Legislature.
It has been held that prosecutions thus instituted need
not conclude "against the peace and dignity of the
State of Alabama," as is required by the Constitution
as to indictments.

It has never been held by this court, however, that
this proviso authorizes depriving the defendant of the
right of trial by a petit jury, though it does expressly
authorize dispensing with a grand jury as to all misde-
meanors. It has been uniformly held by this court that
no prosecution or conviction, for any misdemeanor can
be supported without an affidavit or complaint sub-
stantially conforming to the Constitution and statutes
authorizing such prosecutions without indictment in
the inferior court. Prosecutions, judgments of convic-
tion, and sentences in these inferior courts, even after
appeal to, and judgment in the circuit court, have been
pronounced absolutely void, whether on direct appeal
or collateral attack, when the affidavit or complaint did
not substantially conform to the requirements of the
statutes. These cases are too numerous and too well

known to require citation, but among them may be mentioned those of *Johnson v. State,* 82 Ala. 29, 9 South. 466; *Miles v. State,* 94 Ala. 106, 11 South. 403; *Cross v. State,* 117 Ala. 73, 23 South. 784; *Wiley v. State,* 117 Ala. 158, 23 South. 690; *Barron v. City of Anniston,* 157 Ala. 399, 48 South. 58; *City of Selma v. Shivers,* 150 Ala. 505, 43 South. 565; *Arzumanian v. City of Birmingham,* 165 Ala. 374, 51 South. 645. Cited in these will be found many others to the same effect. It will also be noticed from the opinions and decisions in these cases that it is wholly immaterial whether the prosecution be in a justice court, a city court, a county court, a circuit court, or a municipal court. The conviction and sentence cannot be supported unless based upon an affidavit or complaint which substantially conforms to the requirements of the statutes which authorize the prosecution of misdemeanors without indictment. The statute (now section 6703 of the Code) has uniformly been held applicable and requisite to all prosecutions and convictions for misdemeanor, no matter in what court or courts the prosecution should be instituted or terminated.

The present Municipal Code, now embraced in the Political Code of the state (sections 1046-1460), has established, in some respects, an entirely new system of prosecution as of misdemeanors which are committed within the territorial limits of a municipality. Under the proviso of section 8 of the Constitution, above referred to, all municipal courts are now given original and concurrent jurisdiction with the county courts or courts of like jurisdiction of all misdemeanors committed within the city or town or within the police jurisdiction thereof.—Code, § 1222. It also authorizes appeals to the circuit court or courts of like jurisdiction in all cases for violation of municipal ordinances or for

a misdemeanor, and further provides that trial on such
.appeals shall be had de novo, and be governed in all re-
spects by the laws regulating appeals from judgments
of justices of the peace in criminal cases.—Code, §§
1217, 1451. The Municipal Code also provides that,
when a person has been tried and convicted in a mu-
nicipal court of any offense which is a misdemeanor
under the state laws, "he shall be punished as provided
by law." This, of course, means the general law of the
state.—Code, § 1221. This Code also provides that
judgment of conviction in municipal courts shall be a
bar to a prosecution for the same offense, or substan-
tially the same offense, in the state court, and that a
judgment in the state court shall be a bar to a prosecu-
tion for the same, or substantially the same offense, in
the municipal court.—Code, § 1222.

It is thus made to appear beyond dispute that the
Legislature acting under the proviso of section 8 of the
Constitution has created municipal courts and made
each and all inferior criminal courts, and clothed them
with the power and authority to try all offenses which
are misdemeanors under the general criminal laws, as
well as to try those which are only offenses against the
municipal ordinances or by-laws. It is also made to
appear by this Code that it is immaterial whether the
prosecution in the municipal court is in the name of
the state or in the name of the municipality when the
offense charged is a violation of both the general stat-
utes and the municipal ordinances. The Municipal
Code requires that punishment in each case, whether
imposed for the benefit of the city or for the state, shall
be of the same kind and degree. As has been heretofore
pointed out, it is not necessary that prosecutions for
· misdemeanors in these inferior courts shall be in the
name of the state, or conclude, "against the peace and

dignity of the state."—*Thomas v. State,* 107 Ala. 61, 17 South. 941; *Simpson v. State,* 111 Ala. 6, 20 South. 572.

It thus appears that this vexed question of one act or transaction constituting two offenses—one against the municipality and one against the state—involving two prosecutions, one by the city and one by the state, has been avoided in the Municipal Code by giving the municipal courts concurrent jurisdiction with the state courts, as to the trial of all misdemeanors committed within the territorial limits of the municipality, and by authorizing the prosecution in such cases in the name of either the state or the municipality, and by making prosecutions in either court a bar to a subsequent prosecution in the other. It therefore follows that in all prosecutions in municipal courts for offenses which are misdemeanors the procedure and practice must conform to those constitutional and statutory requirements provided for the prosecution of misdemeanors in all other inferior courts and that a conviction in such municipal courts for offenses which are misdemeanors is absolutely void unless supported by an affidavit or complaint which substantially conforms to the requirements of section 6703 of the Code. If a defective affidavit or complaint will render a conviction and sentence based thereon absolutely void on collateral attack (see *Johnson's Case,* 82 Ala. 29, 2 South. 466; *Miles' Case,* 94 Ala. 106, 11 South. 403; *Shivers' Case,* 150 Ala. 505, 43 South. 565), then a fortiori the entire absence of any affidavit or complaint or information should render the judgment, conviction, and sentence void.

Such a case is presented by the record on appeal now before us. The defendant in this case was arrested without affidavit, oath, or warrant, put upon trial, and convicted of a high misdemeanor, without the color of

[McKinstry v. City of Tuscaloosa.]

an affidavit, oath, warrant, or complaint. This being true, I cannot conceive how it is possible under the laws of this state for such a judgment, conviction, and sentence to be valid. My Brothers have acted and decided on the false premises that the defendant was not charged or convicted of a misdemeanor under the general criminal statutes of the state, but that she was tried and convicted only of the violation of a municipal ordinance. If this latter condition were true, I could readily concur in both the conclusion and the opinion of the majority of the court, but I think I have shown that such is not the fact as shown by the record and by the statutes of the state. My Brothers have acted under another false premise in deciding this case; and that is, that the defendant waived her constitutional and statutory right to affidavit, complaint, or warrant in not requesting it before the trial in the municipal court. This premise is false, for the reason that the defendant could not have waived or dispensed with the necessity of the affidavit or complaint which the Constitution and statutes have ordained and required as the basis of all convictions for misdemeanors in this state. The existence of such affidavit or complaint is jurisdictional, and cannot be waived nor its absence consented to by the defendant. Consent can never confer jurisdiction as to the subject-matter. Neither the municipal court nor the county court of Tuscaloosa had any authority or right or power to proceed to a trial of this defendant without the existence of the affidavit or complaint which the law requires as the basis of all prosecutions for any misdemeanor. That the defendant consented to a trial without such affidavit or complaint, or even her request for same, could not confer jurisdiction on the municipal court or the county court to proceed to trial and conviction without such affidavit

or complaint. I do not doubt the soundness of the proposition that the defendant or accused person in all criminal trials may waive constitutional and statutory rights conferred upon him by law, and may waive the protection of such provisions, but he cannot so waive them, when the effect will be to create a jurisdiction and a power in the court which it did not otherwise possess. Defendants cannot consent to be tried wholly without an accusation which the Constitution and statutes require as a condition precedent to the institution or prosecution of suits against them.—Bishop on Criminal Proceedings, §§ 112, 96, 123; Bisop, New Crim. Law, §§ 996-1006. Jurisdiction to prosecute or convict for crime comes solely from the criminal law, and depends in no degree upon the consent of the litigant, whether state or citizen, sovereign or subject. Neither consent nor request can authorize a court to act in a cause outside the sphere which the law has ordained for it.—*Eberly v. Moore*, 24 How. 147, 158, 16 L. Ed. 612; *Scott v. Sandford*, 19 How. 393, 15 L. Ed. 691. Where jurisdiction depends upon facts in pais, such as residence of parties, there may be a waiver; also, any formalities or irregularities as to indictments, informations, or complaints may be waived; but requisites, and certainly the existence of indictments, affidavits, or warrants required by law as a condition precedent to a prosecution or conviction, cannot be waived, or the prosecution consented to, in the absence of such documents. Nothing that is of the essence of jurisdiction, in either a civil or a criminal proceeding, can be waived. The absence of a declaration or a complaint in a civil suit, much less of an indictment in a criminal case, cannot be waived. The existence of a declaration or complaint which states no cause of action, or an indictment, affidavit, or complaint which charges no offense

cannot support a judgment, though no objection was
made upon the trial or on appeal, and though such trial
or prosecution was expressly consented to, or even re-
quested, by the defendant.    Though the statutes in ex-
press terms · require objections to complaints, indict-
ments, or information to be made, if at all, at an early
stage of the proceedings, yet a judgment on such insuf-
ficient complaint or indictment cannot be sustained,
though no objection was interposed on the trial or ap-
peal.—Bishop on Criminal Procedure, §§ 123, 112;
*Doyle's Case,* 110 Mass. 103; *Newcomb's Case,* 37 Miss.
383.   With the limitations as to jurisdiction, it is a doc-
trine, to which there are few exceptions, that a party
may waive any right which the law has given him, even
a constitutional right.   The right of waiver is a part of
that principle of natural justice that one should not
complain of that to which he has consented.   But · in
criminal trials it is a rule of long standing, in both Eng-
lish and American courts, that for the protection of the
accused courts will often refuse him the permission to
make waivers of his constitutional or statutory rights
as to his liberty or life, and, if he make them, they will
decline to hold him to the consequences.   But as to this
there is probably a real, as well as an apparent, dif-
ference of opinion.   In ancient times the benefit of
counsel was denied persons charged with treason or fel-
ony.   The judges then counseled the accused, to the end
of preventing prejudicial waivers.   A great criminal
jurist has said that courts were so far of counsel to the
prisoner that they should not suffer him to consent to
that which was manifestly wrong and to his prejudice.
·It has always been the practice in this state and in the
United States, as well as in many of the other states of
the Union, to grant new trials to defendants in crim-
inal cases, especially in capital cases, when a well-

founded doubt exists as to the propriety of the conviction.—*State v. Slack,* 6 Ala. 676.

Let us illustrate this principle of waiver in criminal prosecutions by applying it to the facts in this case: The Constitution and statutes together require an indictment as the basis for all prosecutions for felonies in this state, or an indictment, affidavit, or complaint in lieu thereof, as for all misdemeanors. This is required to support any conviction for any crime. The accused or defendant can no more waive the constitutional and statutory requirements of an affidavit and complaint in misdemeanor cases than he can an indictment in felony cases. His right to waive is no more extended in the one case than in the other, because each is necessary to the jurisdiction of the court to support a prosecution or conviction. The Constitution and statutes both provide that the accused is entitled to a copy of the affidavit, information, or complaint, to demand the nature and the cause of the accusation against him, and to have a copy thereof. This is a right secured to him by the Constitution and the statutes, but it is a right for his protection and benefit, and hence he may waive it. While he can waive the service or furnishing him with a copy of the accusation, he cannot waive the existence of it, nor the sufficiency of it, except as to form or irregularity. It is a well-settled law of this state that in creating local tribunals, such as municipal and other inferior courts, and in preserving their jurisdiction, the Legislature and courts should keep in view two fundamental and cardinal principles: First, municipal or inferior courts have such jurisdiction, and such only, as is expressly conferred or reasonably implied. A fair doubt as to the extent of the jurisdiction or power of such tribunals should be resolved against them; and, second, strict regard should be had

[McKinstry v. City of Tuscaloosa.]

to constitutional provisions, the object and purpose of which are to secure the liberty, and to protect the rights of the citizen. Our state and federal Constitutions have been made intentionally and expressly to contain the substance if not the words of many provisions of Magna Charta, to the end that no citizen shall be deprived of life, liberty, or property except by the judgment of his peers, or by the law of the land, among which provisions secured to every citizen is the right of trial by jury as for all criminal offenses. These provisions, cardinal as they are, and of the fundamental law of the land, should no more be violated or disregarded by the courts than by the Legislature. Courts unhesitatingly pronounce null and void the most solemn acts of the Legislature, if in violation of these cardinal and fundamental principles; and they should with equal care observe, maintain, secure, and preserve them to the citizen in all cases coming before them for review. These cardinal principles of the Magna Charta are memorable and revered because of their assertion of precious truths so necessary to the individual happiness, liberty, and life of the citizen. They are historic in their associations. They have served humanity faithfully as beacon lights in the progress of liberty and righteousness, and are the controlling parts of our fundamental law. They should not be overlooked nor disregarded in the powers granted to municipal or other inferior courts nor in the jurisdiction or power with which such courts are clothed. Lord Chatham said that these provisions of the Magna Charta were worth all the classics, because they protected the personal liberty and the property of all men, by giving security from arbitrary imprisonment and spoilation. He further said that to have procured this great charter, to have preserved and matured it, constituted the immortal claim of England upon the esteem

of mankind. Under its provisions all persons, from those of the highest station to the humblest individual, are equally entitled to its protection, and equally bound to render it obedience. All men and the sovereign are governed by this general law. The entire structure of our government and laws rests upon these constitutional provisions which thus secure these rights to the individual. As to him this security and enjoyment of freedom and of property is everything, and to the government nothing, except in so far as it is an institution to award that blessing. It is a cardinal doctrine of English and American jurisprudence, declared in the Constitution of England, and written in all those of America, both state and federal, that any person accused of crime has a right to be informed of the nature and cause of the accusation, to have the offense charged against him fully, and plainly, substantially and formally described to him. This is but the dictate of justice and common law as well as constitutional. This information—no matter by what name called—ought to contain all that is material to constitute the crime, and, as the Constitutions say, in the form prescribed by law. The purpose of such information is threefold: First, to enable the accused to make his defense; second, to enable the court to pronounce the proper judgment; third, to enable the accused to plead the judgment in bar of a second prosecution for the same offense.