# Monteith *v.* The State.

## *Murder.*

(Decided May 24, 1909.   49 South. 777.)

1. *Homicide; Evidence.*—The theory of the state being that the defendant lay in wait for the deceased on the roadside, and killed him with a shotgun, and it appearing that the defendant had been at the village of C. where the deceased was shortly before the killing, it was competent to show that there was a cut-off or path from the village to the road which deceased was traveling when killed, and that the defendant had, on occasions before, used the path, and that it was generally used by the people, as having a tendency to show that accused anticipated deceased's presence on the road, and took the nearer way to arrive at the place of killing, ahead of deceased.

2. *Same; Motive and Intention.*—Where there was evidence tending to show that the deceased had been a witness against the defendant in a larceny case; and that defendant had made threatening allusions to that fact, among them being that decedent would never appear against him, some of which statements were made about a year before the homicide, these facts, together with the indictment against the accused in the larceny case, and the records showing a continuance of the prosecution therein, were admissible as tending to show motive; it was not competent, however, to go into the inquiry of the merits of the larceny case.

3. *Same; Instructions; Self Defense.*—A charge asserting that it is immaterial whether the deceased had a weapon, but that, if he made a demonstration, such as to lead the defendant to believe that he was about to draw a pistol, defendant had a right to fire his gun first and kill the deceased without waiting to see whether deceased had a weapon, failed to hypothesize the defendant's freedom from fault in provoking the difficulty, and was properly refused.

4. *Same.*—A charge asserting that if the accused did not provoke the difficulty, but approached the deceased in a peaceful manner, and deceased replied angrily, and advanced insultingly towards the defendant, and placed his hand near his pistol pocket so as to indicate to a reasonable mind that his purpose was to draw, defendant could anticipate him and fire first, omitted to hypothesize that the acts of accused was the expression of an honest belief on his part of the necessity to shoot when he did.

5. *Same.*—In order to justify a homicide on the ground of self defense, the burden is upon the defendant to show that there was a pending present danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other reasonable means of escape, unless the evidence which proves the homicide tends also to show the excuse or justification.

[Monteith v. The State.]

6. *Same; Evidence; Malice; Use of Deadly Weapon.*—Unless the evidence which proves the killing tends also to show that it was perpetrated without malice, the law presumes malice in the use of a deadly weapon, and casts on the defendant the burden of repelling the presumption where the charge is murder.

7. *Appeal and Error; Harmless Error; Objections to Evidence.*— Where it does not appear that a question was answered and assuming that it sought inadmissible testimony, it was harmless error to overrule objection to the question.

8. *Same; Admission of Evidence.*—Where it appears from the bill of exceptions that the accused offered a number of witnesses, to-wit, Doc Hembree, and ten others named, whose testimony tended to show that the deceased was a man of bad character, etc., and that on cross examination the solicitor asked "witness" if deceased was not a good neighbor and kind-hearted man, that accused's objection was overruled, and that some of the witnesses answered yes, and some answered no, it did not appear from the record that the defendant was prejudiced by the overruling of his objection, since the witness might have been one of those who answered in the negative.

9. *Charge of Court; Singling Out Evidence.*—Charges asserting that the jury has a right to look to the character of the wound upon decedent-body in determining whether the defendant is corroborated as to his position when he fired the shot that killed deceased; that if any witness was corroborated, it should be looked to as strengthening the evidence of such witness, single out features of the evidence and were properly refused.

10. *Same; Argumentative Instructions.*—Argumentative charges are always properly refused, such as charges 6 and 8 in this case.

11. *Evidence; Interest of Accused.*—The interest that a defendant has in the result of a verdict may be considered by the jury in determining the weight they will give to the evidence.

12. *Same; Reasonable Doubt.*—A doubt to authorize an acquittal must be real and substantial; it is not every doubt that authorizes an acquittal.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Dock Montieth was convicted of murder in the second degree, and appeals. Affirmed.

The following charges were refused to the defendant: "(2) I charge you that you have the right to look to the character of the wounds upon deceased's body as to whether the defendant is corroborated as to his position when he fired the shot that killed deceased. (3) If any witness in the case is corroborated, it should be looked to as strengthening the evidence of such witness. (4)

The character of a man is not made from any particular period, but is made from his whole life, from the year of accountability to death. (5) I charge you that it is immaterial as to whether the deceased had a weapon or not. If he made a demonstration such as lead the defendant to believe deceased was about to draw a pistol from his pocket, the defendant had the right to fire his gun first, and to kill deceased, without waiting to see whether deceased had such weapon or not; and if defendant did fire under such circumstances, and kill .deceased, he had the right to do so. (6) It would make no difference whether defendant's sister had gone wrong before she did with deceased, yet he had the right to reclaim her and to continue his efforts in that direction, and you have the right to look to all the evidence along that line in determining the conduct of deceased and defendant at the time deceased was killed. (7) If the jury believe from the evidence that the defendant did not provoke or bring on the difficulty, but approached the deceased in an orderly and peaceful manner, and the deceased replied angrily, and insultingly advanced towards him, and placed his hand upon, or in the direction of, his pistol pocket, in such manner as to indicate to a reasonable mind that his purpose was to draw, and the defendant was authorized to anticipate him, and fire first, they will acquit the defendant. (8) I charge you, gentlemen of the jury, that the defendant had the right to consider the welfare of his sister, and to use all means for her good that were not in violation of law."

The following charges were given for the state: "(1) I charge you, gentlemen of the jury, that it is not every doubt which authorizes an acquittal, because everything depending on human testimony or pertaining to human affairs is susceptible of some doubt. Such a doubt, to authorize an acquittal, must be real and substantial.

(2) The court charges the jury that the defendant is interested in the result of his trial, and they may look to this fact in determining what weight they will attach to his testimony.　(3) The court charges the jury that the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice.　(4) The jury should consider all the evidence in the case, and after such consideration they will determine whether or not they believe, from all the evidence, beyond a reasonable doubt, that the defendant is guilty.　(5) The court charges the jury that, when the defendant sets up self-defense in justification or excuse for a killing, the burden of proof is on him to show the jury by the evidence to the reasonable satisfaction of the jury that there was a present, impending danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other reasonable means of escape, unless the evidence which proves the homicide proves also the excuse or justification."

BILBRO & MOODY, for appellant.—The court erred in permitting the state to show that there was a path from the town to the road which was frequently travelled.—*Thomas v. The State*, 107 Ala. 13.　The court erred in permitting the indictment and record in the larceny case to go to the jury.—*Love v. The State*, 134 Ala. 156; *Miller v. The State*, 130 Ala. 1; *Wicard v. The State*, 109 Ala. 45.　The court erred in giving charge 2 for the state.—1 Mayf. 174.　Charge 3 exacts a too high degree of proof.—5 Mayf. 151.

ALEXANDER M. GARBER, Attorney-General for the State.—The court did not err in admitting the indict-

[Monteith v. The State.]

ment and record 'in the larceny case in evidence.— *Childs v. The State,* 55 Ala. 25; *Marks v. The State,* 87 Ala. 99. Counsel discuss other assignments of error, but without citation of authority. Charges 2 and 3 were properly refused.—*Hussey v. The State,* 86 Ala. 34. Counsel discuss other charges, but without citation of authority.

McCLELLAN, J.—The conviction was of murder in the second degree. The theory of the state appears to have been that defendant laid in wait for deceased on a roadside and killed him with a shotgun. A circumstance properly submitted to the jury for their consideration was the fact that there was a sort of "cut-off" path leading from Carpenter, a village, to the road on which deceased was traveling from Carpenter when he was killed, and also that defendant knew of this path, and had on occasions before traveled it, as well as the fact that it was generally used by the people. The tendency of this testimony naturally was to show, along with the other evidence, that defendant, being at Carpenter shortly before the shooting, anticipated deceased's presence on the road, and took to the path as a nearer way than the road, to arrive at the place of the tragedy before deceased did. There was no error in admitting the indicated testimony.

The state presented testimony tending to show that deceased was a witness against defendant, among others, on a charge of larceny; that defendant was aggrieved over this, and had at various times made threatening allusions to the fact, among them, that deceased would never appear against him. Some of these threats or statements were made something like a year before the shooting. The court admitted, over defendant's objection, the indictment against defendant and others, and

also the record of the circuit court, showing a continuance of the prosecution for cause stated. All this evidence was clearly admissible.—1 May. Dig. pp. 329, 330. It was competent as tending to show motive and intention, and to give point to the hostile statements imputed by some of the witnesses to the defendant. The order for continuance tended to support the natural inference that the prosecution, affording defendant grievance against deceased, was undisposed of at a period just before or at the time of the shooting. The merits of the larceny prosecution were properly forbidden to be inquired into.—*Commander's Case*, 60 Ala. 1.

The defendant introduced his sister, Miss Monteith, as a witness, and she testified to illicit relations having existed between her and deceased some time previous to the shooting; that defendant knew of this; that deceased attributed witness' refusal to again cook for him to defendant's interference; that he (deceased) entertained ill will toward defendant on this account; and that defendant was instrumental in keeping her from going back to deceased's service. She testified that she had three children, the eldest seven years of age. On cross-examination the state asked her if she had not been delivered of a bastard child and whether she had not sexual intercourse with many men. While defendant's objection was overruled to these questions, from the bill it does not appear that either were answered by the witness. No prejudice, therefore, resulted to defendant, if we assume the questions sought inadmissible testimony.

The bill recites: "The defendant introduced a number of witnesses, to wit, Doc. Hembree" and 10 others named, whose testimony tended to show that Ladd's character was bad; that he was quarrelsome, over-bearing, dangerous, and a bloodthirsty man. On cross-examination state's counsel asked witness if Ladd was not a

good neighbor and a kindly hearted man. The defendant objected, because illegal and immaterial. The court overruled the objection, and defendant excepted. Some answered that he was; some that he was not. On this status it is apparent that the trial court cannot be said to have erred to defendant's prejudice. The "witness" to whom the question was put, and thereupon objected to by defendant, and his objection overruled by the court, may have been among the "names" of those who answered the question in the negative, and, if so, obviously to defendant's advantage.

Charges 2 and 3, refused to defendant, singled out features of the evidence, and were for that reason, if not others, properly refused. Charges 4, 6, and 8 were argumentative, and were, hence, well refused. Charge 5 omits, in hypothesis, freedom from fault in bringing on the difficulty. Charge 7 omits to hypothesize that the act was not the expression of an honest belief on the part of defendant of the necessity to shoot when he did so.

None of the special charges given at the instance of the prosecution were erroneous as instructions.

There is no error in the record and the judgment is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and ANDERSON, JJ., concur.