200 So. 748

### NEWS EMPLOYEES' BENEVOLENT SOC. v. AGRICOLA.

#### 6 Div. 728.

Supreme Court of Alabama.

Feb. 20, 1941.

Rehearing Denied March 20, 1941.

Lange, Simpson, Brantley & Robinson, of Birmingham, for appellant.

Ellis, Lindbergh & Ellis, of Birmingham, for appellee.

672

GARDNER, Chief Justice.

The News Employees' Benevolent Society (hereinafter called the Society), is a corporation whose membership is confined, as the name indicates, to those who are employed by the Birmingham News Company for a period of thirty days prior to membership application. The purpose of the Society is the creation of a fund to be used for the relief of its members in event of sickness or disability and death. Initiation fees and dues are paid by members according to different classes, the payment of sick and disability benefits being in proportion to amount of such initiation fees and dues the member elects to pay.

As officers the Society has a president, three vice-presidents, a secretary treasurer and three members of the board of trustees, who have general supervision over the affairs of the Society. A finance committee is appointed by the president with general supervision over loans made by the Society to its members, such membership, at the time here material, numbering slightly in excess of four hundred.

The secretary treasurer is the only salaried official. The matter of expulsion of a member from the Society is dealt with in Section 11 of the constitution and by-laws as follows:

"Any member may be expelled from this society upon written charges preferred to the President by any member of the society, said charges to be referred to a committee of five to be appointed by the President, the accused having the right to appear before said committee. Said committee shall make its report in writing to any special or regular meeting of the Board of Trustees, which shall decide the guilt or innocence of the accused by a two-thirds vote of members of the board, and their decision shall be final.

"No member expelled for cause shall have any claim upon the society and he or she·shall be debarred from readmission for one year, except on a two-thirds vote at a regular or special meeting of the members called in due form to consider same, and said applicant shall take the same course as required of a new member, and all prior rights and privileges are forfeited."

Upon the dissolution of the Society all funds in hand and in bank are to be divided among the contributing members upon the Society's roll at the time of dissolution in proportion as they have contributed therein. A large part of the revenue of the Society is from loans to members, and Section 19 touching that matter is as follows:

"The secretary-treasurer shall place in the loan fund all moneys of the society to be loaned to members in good standing.

"The office of the secretary-treasurer shall remain open for the transaction of business from 9 a. m. to 5 p. m. each week day.

"The secretary-treasurer may loan not exceeding one week's salary or the 'time' already earned by the borrower, on approval of the head of the borrower's department, or as much as two weeks' salary when note carries two acceptable endorsers. All other loans must be referred to the Finance Committee, who in their judgment may grant or refuse any application not in excess of five weeks' salary, provided that no loan shall be made except where the application bears the endorsement of at least three members in good standing in the society whose combined salaries for five weeks shall be double the amount of the loan. Provided also that no member of the Finance Committee shall be permitted to endorse any loan.

"The maximum personal loans and endorsements allowed any member shall not exceed $500.00, or in excess of 10 weeks' salary.

"Heads of departments shall not endorse notes of members of their departments.

"Women members are prohibited from endorsing notes of men members.

"Minors shall not be allowed to borrow more than time earned or be accepted as endorsers for others.

"The rate of interest on all loans shall be not less than two (2) per cent per week for each week or fraction thereof on loans up to $150.00, and one (1) per cent per week on the portion of all loans in excess of

$150.00, and must be paid weekly on regular pay days; provided that no interest charge shall be made of less than five (5) cents.

"All applications for loans shall constitute orders on the cashier of The Birmingham News Company for the amount named, with interest, to be deducted from the borrower's pay envelope on the next regular pay day, and all endorsements shall also constitute similar orders on said cashier against the weekly salary or wages of the endorser.

"Endorsers of forfeited notes must on notice from Secretary-Treasurer, make new notes, properly endorsed, to cover their loss on such notes; said notes shall bear no interest, but must be paid at a minimum rate of $1.00 per week.

"When a borrower leaves the employ of The Birmingham News Company his loan shall become due immediately. When an endorser leaves the employ of The Birmingham News Company, or dies, said borrower must at once either pay his note or obtain another satisfactory endorser. In event of death of any member indebted to the society said indebtedness shall be deducted from the death benefit".

At the end of each year, between the first and fifteenth of December, the trustees (Sec. 20) shall declare a dividend out of the profits, each member receiving a dividend in proportion to amount paid, and that dividends to a borrower shall be credited to his outstanding loan.

Plaintiff, C. P. Agricola, had long been an employee of the Birmingham News Company and a member of this Society, having joined the same in December, 1925. Throughout this period of time (more than thirteen years), he had paid dues of fifty cents per week or $26 per year, but had made no claim and was paid no benefits under the insurance provisions of the Society. He belonged in that class which entitled him to $25 a week for sickness or disability and a death benefit of $250. He supported the Society by the payment of his dues, guaranteeing notes of borrowers and himself borrowing money and paying interest required by the constitution and by-laws.

One Chandler was also a member of the Society and on March 1, 1938, had Agricola to endorse his note for borrowed money. Agricola insists the note, when endorsed, was for only $50. But it now appears in the sum of $65 and his testimony indicates a change in the amount. He also states an understanding with Chandler there would be another endorser and none obtained. The Chandler note was due in one week and in excess of Chandler's weekly earnings. Agricola insists under provisions of Section 19 of the by-laws of the Society two endorsers were required and that he had a right to presume these provisions would be complied with and that under further provisions of said Section 19 the week's earnings would be applied in payment on the note. In the meanwhile and on March 3, 1938, Chandler had Agricola to endorse another note for $22 to the Society, what is called a "Term note", payable in installments.

A very short time thereafter, Henderson, Finance Committee Chairman, who approved the $22 note, and about two days after the execution of the $65 note, approved an agreement with Chandler to extend the $65 note without the knowledge or consent of Agricola. In the agreement with Chandler the Society was instructed to deduct $4.50 per week from his salary and apply on his full indebtedness of $282 in addition to interest weekly payment.

Thereafter, and for a period of three weeks, Chandler paid the $4.50 each week plus interest payments required by the constitution and by-laws. On March 25, 1938, Chandler filed petition in bankruptcy. Soon thereafter Agricola learned of the irregularities to which reference has been herein made, and interposed his objections to being held to any liability on the $65 note. It may be added that the $22 note has been paid and the controversy as to his liability related solely to the other note. He presented his objections to the committee of the Society in the summer of 1938 and he invited the Society to institute suit on the note that the matter of his liability may be determined in that manner. No such suit was ever brought.

In December, 1938, there was a dividend of $52 due Agricola by the Society, which was not paid. Upon inquiry he learned the dividend had been applied to the Chandler note. Thereupon suit was entered by him against the Society to recover this dividend. This was January 11, 1939. Soon thereafter he was informed that a member of the Society had preferred expulsion charges against him and a committee appointed to hear the charges. There was a hearing before the committee, the charges being presented by Henderson. Agricola appeared

and insisted he was not liable on the note for the several reasons above indicated, that is, the by-laws required two endorsers, as the note was in excess of the maker's weekly earnings, and such was the understanding,with Chandler; the note had been altered; and it had been extended without his knowledge or consent.

The committee hearing the matter recommended expulsion to the Board of Trustees. Before action on the committee's recommendation by the Board of Trustees, one Hauser, a member of the committee to hear the charges, requested an interview with Agricola in which he stated to him, as testified to by plaintiff in this suit, as follows: "Agricola, I tell you, you haven't got a chance on that suit. You haven't got a chance in the world with the suit to recover the fifty-two dollars, and the committee has asked me to ask you to withdraw that suit. If you do everything will be just as it is. They would not expel you. You could continue to be a member of the Association".

Agricola then asked if the dividend would be paid upon suit being withdrawn, to which Hauser replied in the negative. Thereupon Agricola declined to withdraw the suit and a day or two later received notice that the Board of Trustees had concurred in the committee's recommendation and he had been expelled from the Society. Thereafter, and in April, 1939, this suit against the Society· followed for recovery of damages upon the theory that his expulsion therefrom was in bad faith, willful, wrongful and malicious.

The cause was tried for plaintiff upon counts C, D and E, to which defendant's demurrers were overruled. Upon the trial plaintiff was his only witness and what has been stated herein represents in a large part the substance of his testimony. There were some conflicts and defendant's testimony tended to show plaintiff was expelled or rather suspended from the Society for only one year based upon his refusal to pay the Chandler note of $65 and such action was in good faith.

Undisputedly, however, the notice received by plaintiff was one of unconditional expulsion and upon the trial of this cause was the first time plaintiff ever heard of any matter of suspension only. Upon submission of the cause to the jury there was verdict for the plaintiff in the sum of $1,-200, and from the judgment following defendant has prosecuted this appeal.

The argument has assumed a rather wide range. But we think the meritorious questions presented are few and the discussion here may be embraced within a narrow compass.

■ There is some argument that no right of action would lie to recover damages for wrongful expulsion. 19 R.C.L. 1252. But this argument is based upon the minority view which this court declined to follow, and the question was settled in this state in favor of such right of action in Grand International Brotherhood, etc., v. Green, 210 Ala. 496, 98 So. 569, where the case of Thompson v. Grand International Brotherhood, etc., 41 Tex.Civ. App. 176, 91 S.W. 834, was approvingly cited. Defendant seeks to distinguish the instant case from that of Grand International Brotherhood v. Green, supra, upon the theory that in the latter a property right was involved in that plaintiff's employment was at stake. True, plaintiff here is not alleged to have lost employment by reason of expulsion. But there are other elements of damages claimed of more or less substantial nature, such for instance, recognized in the Green case, the loss of sick and death benefit insurance.

■ Upon dissolution· of the Society he was entitled to share in its funds on hand and for a long number of years had paid weekly dues amounting to a substantial sum. By analogy the case of National Life & Accident Ins. Co. v. Baker, 228 Ala. 355, 153 So. 279, is authority tending to show these dues may properly be considered in determining plaintiff's damages resulting from a wrongful and malicious expulsion from the Society.

■ We think it clear enough all of these matters tend to establish the fact that plaintiff had property rights of which he was deprived. In addition, in cases of this character, punitive damages are recoverable (Green case, supra), as well also damages for mental ·suffering and humiliation caused by the wrongful expulsion. 19 R. C.L. 1253. True the courts are indisposed to interfere with the internal management of organizations of this character. Shaup v. Grand International Brotherhood, etc., 223 Ala. 202, 135 So. 327. But in the matter of expulsion the organization is not to act arbitrarily and in bad faith and in discord with public policy and the laws generally. 7 C.J. 1098; 10 C.J.S., Beneficial Associations, § 46; 19 R.C.L. 1250; Green

·case, supra. This latter authority is also to the effect that the constitution, by-laws and regulations of the organization are in the nature of a contract between its members.

■ Demurrers to counts C, D and E were overruled without error. As frequently observed the purpose of pleading is to disclose and not conceal the real issues to be tried and to be considered in the light of common sense and sound logic. Birmingham Ry., Light & Power Co. v. Nicholas, 181 Ala. 491, 61 So. 361.

■ Counts C and D fully disclose that plaintiff's controversy arose over the matter. of his liability on the Chandler note and his contentions in regard thereto. These averments were merely by way of illustration, as it were, pointing to the real ·cause of action herein stated, that is, those ·matters were used by the Society as a ·mere subterfuge, and that plaintiff was ·wrongfully and maliciously expelled from the Society because of his suit against it ·to recover the dividend due to be paid in December, 1938. They sufficiently state the cause of action maintainable under the authority of the Green case hereinabove noted.

■ Count E sufficiently discloses, as indeed do the other counts, that the matter of endorsement of the Chandler note was a tri-partite agreement as evidenced by the constitution and by-laws of the Society made exhibit thereto. This count charges a willful and intentional violation of the constitution and by-laws of the Society in holding plaintiff to liability on the Chandler note, and action on the part of the Society in defiance of the contract provided therein, with the consequent result that his expulsion was wrongful and malicious. Demurrers to this count were likewise properly overruled. 19 R.C.L. 1249; 7 C.J. 1098 and 1100, 10 C.J.S., Beneficial Associations, § 46.

■ Chandler's average earnings were some $48 per week. The Society insists the note was for $65. As we read the by-laws it would seem two endorsers were required. Plaintiff knew of no custom to the contrary, if such could be interposed as against the by-laws (a question left undetermined, Kocher v. Supreme Council, etc., 65 N.J.L. 649, 48 A. 544, 52 L.R.A. 861, 86 Am.St.Rep. 687), yet the difference between the sums is too great to come within the influence of evidence offered as to any such custom or practice.

■ Plaintiff's testimony makes out a case on count E, and the affirmative charge requested as to this count was properly refused. So likewise as to counts C and D. As previously observed these counts are based upon the charge of wrongful and malicious expulsion of plaintiff because he had brought suit for the dividend due him. No such ground for expulsion is found in the constitution and by-laws and of course the courts generally recognize no such action as ground for expulsion. ·7 C.J. 1100, 10 C.J.S., Beneficial Associations, § 46.

■ The brief outline of the case which has been made should suffice to show these counts were properly submitted to the jury. The long controversy over the Chandler note, the demand for the dividend due and its refusal, followed by suit therefor, which suit was so soon followed by plaintiff's expulsion after Hauser, a member of the committee, had suggested to plaintiff withdrawal of his suit as a solution of the entire matter, were all matters to be considered by the jury upon the question of wrongful and malicious expulsion. As to count D, the averment indicating the Society was not an innocent purchaser because of apparent alterations was immaterial, the gravamen of the charge being that all of the matters concerning said note was used by the Society as a mere pretext or subterfuge and that in fact the expulsion was the result of the suit plaintiff had brought. In any event the Society, under the proof, would not be an innocent purchaser because a party to the entire transaction, and the matter would be one of variance, to which no attention was directed upon the trial of the cause. Circuit Court Rule 34.

■ Nor are we persuaded the case is one justifying interference here with the ruling of the court denying the motion for a new trial, either upon the matter of the weight of the evidence or excessiveness of the verdict. Nor would the action of the court in giving to the jury· some charges upon recoverable damages more favorable to defendant than was its due, justify this court in holding the verdict excessive in view of the language of the general charge of the court as well as those elements of damages which embrace mental suffering and humiliation and those which are classed as punitive. Parisian Co. v. Williams, 203 Ala. 378, 83 So. 122; Talley v. Whitlock, 199 Ala. 28, 73 So. 976; Alabama Power

676

Company v. Stringfellow, 228 Ala. 422, 153 So. 629.

Defendant further argues it was due a new trial on account of prejudicial argument of counsel for plaintiff·in stating first to the jury that defendant was charging its members on its loans the usurious rate of interest of 2 per cent per week and that this amounted to 104 per cent per year. Objection to the argument was interposed and a mistrial demanded. In response to the objection the trial court admonished counsel for plaintiff to refrain from any prejudicial statement or otherwise it would be the duty of the court to declare a·mistrial. Counsel stated: "I got excited. People do things they ought not to do". Following this the trial court further admonished the jury against allowing any prejudice to enter into the case and warned them particularly of their oath to try the case fairly and without prejudice. But the ·court declined to declare a mistrial.

■ The statement of counsel was in fact supported by the provisions of the constitution and by-laws in evidence in ·the case. Our decisions are to the effect that though a fact may be in the proof, yet this would not justify an undue use thereof in order to arouse sympathy or prejudice. Birmingham Electric Company v. Mann, 226 Ala. 379, 147 So. 165. Each case must, of course, be rested upon its own peculiar facts.

■ So far as we can observe from this record the trial was fairly conducted with nothing of prejudice whatever appearing save this one remark on evidence which did not in fact constitute an issue in the case. And upon that argument we are persuaded, upon consideration of the whole case, the remarks of the trial court sufficed for all purposes and no error to reverse is made to appear.

■ Defendant took exception also to remark of plaintiff's counsel to the effect that defendant was trying to deprive plaintiff of a trial by jury, "something he was· entitled to as an American Citizen". The court again admonished the jury against being influenced by an appeal to prejudice. But there was evidence tending to support the argument. Bad faith and malice were involved. Plaintiff's testimony was to the effect that during the controversy as to the Chandler note he invited a suit at law so that the matter of his legal liability might be established one way or the other. No such suit was brought, but the Society instead appropriated the dividend due to him in..part payment on .the Chandler note. The following observation of this court in Birmingham Electric Company v. Cleveland, 216 Ala. 455, 113 So. 403, 408, is here pertinent: "The court cannot too narrowly circumscribe the scope and latitude of argument. Counsel must be allowed, within limits, to draw their own conclusions and to express their arguments in their own way, provided, of course, they do not travel out of the record or make use of unfair means to create prejudice in the minds of the· jury".

■ All of the facts considered and in the light of the issues involved we are unwilling to hold the action of the court in declining to exclude the argument presents error to reverse.

■ Of course it is understood that the malice involved in actions of this character is not necessarily personal hate or ill will, but that state of mind which is reckless of law and the legal rights of the citizens. Evers-Jordan Furniture Co. v. Hartzog, 237 Ala. 407, 187 So. 491.

■ In the discussion here we have assumed, as counsel for all parties appear to have so assumed, that plaintiff's refusal to pay the Chandler note presented grounds for expulsion under any circumstances. In view of the fact the constitution and by-laws make no such provision, defendant insists the failure to pay endorsed notes (loans constituting a large part of its revenue) is subversive of the fundamental objects of the Society, and of consequence a proper ground. for expulsion. 19 R.C.L. 1249. As it is unnecessary to a decision of the case, we make no committal upon that question.

Upon consideration of the argued assignments of error we find no grounds upon which reversal should be had and the judgment is accordingly here affirmed.

Affirmed.

THOMAS, BROWN, and FOSTER, JJ., concur.