105 So.2d 541

Sanford GARRETT

v.

STATE of Alabama.

5 Div. 684.

Supreme Court of Alabama.

Aug. 28, 1958.

Rehearing Denied Oct. 16, 1958.

Walker & Walker, Opelika, for appellant.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

SIMPSON, Justice.

Sanford Garrett appeals from a conviction of murder in the second degree and a sentence of imprisonment for thirty years for the killing of his estranged wife, Alice Lankford Garrett.

The tendency of the State's evidence shows the following: Defendant and his wife had been separated for some time, and he was presently defending a divorce action filed by her against him. Alice and one Hanson had gone to a roadside beer joint, and the defendant followed them in his car and parked in the rear of the establishment at a point from which he observed his wife and Hanson inside, where they drank some beer and danced. After a while his wife and companion left the store, entered the latter's car, and started to drive off when it was discovered that two of the tires on the car were flat. The couple then returned to the store where Hanson borrowed the keys to the proprietor's house in the rear for the purpose of telephoning for assistance. They then proceeded to the house, and while Hanson was in the act of telephoning, the defendant procured a shotgun from his automobile, went to the house, burst open the door and stated: "I have found you lovers together". Mrs. Garrett and Mr. Hanson succeeded in closing the front door upon the defendant and latching it. Hanson fled to other parts of the house seeking escape, but not finding a way out, he returned to the hallway in time to see Mrs. Garrett struggling over the gun with the defendant, who had again forced open the door. Mrs. Garrett had hold of the barrel and she was saying, "Sanford, you'd better not shoot me", or words to that effect. The gun was fired and Mrs. Garrett was killed. One witness testified that in response to a question, "My Lord, Sanford, did you kill her [deceased]?", defendant answered, "I hope I did".

It is the theory of the defendant that the gun fired accidentally, but the foregoing evidence would have justified a verdict of homicide in any degree the jury might agree upon.

One insistence of error is that after the solicitor stated to the jury "this is a charge of murder in the first degree" and read the indictment, defendant's attorneys in pleading "not guilty to the indictment" were not permitted to plead "not guilty" to the other lesser offenses embraced in the indictment. But the court stated: "Of course your plea of not guilty includes all of them". Cases have been cited by appellant relating to what is allowed in an opening statement to the jury, but they are inapposite to the question here. The trial court could, in the exercise of due discretion, have permitted the defendant to so plead, but he was not required to. In view of the statement of the trial court above and his oral charge to the effect that the indictment also included charges of second degree murder and first and second degree manslaughter, we do not think the defendant suffered any prejudice by this ruling.

Defendant argues error in the action of the trial court in sustaining the objection of the State to defendant's counsel's argument to the jury in referring to Hanson that: "He was going with her for something, and you know what it was for". We do not see that such argument shed any light on the guilt or innocence of the defendant, who had been separated from his wife and was being sued for divorce. There seems to be nothing in the evidence bearing on her conduct which offers any clear inference derogatory of her character, even if it could be said that her character was a relevant, material issue in the case. Counsel is allowed, within limits, to draw their own conclusions and to express their arguments in their own way, provided, of course, they do not travel out of the record or make use of unfair means to create prejudice in the minds of the jury. News Employees' Benevolent Society v. Agricola, 240 Ala. 668,

200 So. 748; Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 113 So. 403. But the presiding judge, as a rule, can best determine when discussion is legitimate and when it degenerates into abuse. Alabama Power Co. v. Goodwin, 210 Ala. 657, 99 So. 158. And each case must be determined on its own peculiar facts, leaving much discretion to the trial court. Phillips v. Ashworth, 220 Ala. 237, 124 So. 519. In the instance noted we are unwilling to pronounce prejudicial error in the stated ruling.

Moreover, it might also be suggested that the persistence of defense counsel in seeking to inject this matter into the case seems to have fairly well achieved its purpose where later in argument the following occurred:

"Mr. Young [Solicitor]: If the court please, at this time I would like to make an objection here to this argument of the defense. The defense persists on casting disparaging remarks toward the person of this deceased. They persist upon playing upon an angle that has not been brought into this case under any circumstances.

"The Court: Well, go ahead, Mr. Walker and stick to the facts.

"Mr. Walker: I will stick to the facts.

"And later.

"Mr. Young: Now, if the court please, as I recall it, Mr. Jackson said there was no kissing going on.

"The Court: Well, Mr. Young—

"Mr. Young: I don't like for him to misquote the evidence.

"The Court: Wait just a minute. That is argument to the jury. I think the jury can remember the evidence about as well as Mr. Walker or Mr. Young. Go ahead."

Some argument is made with reference to the conduct of the Chief Deputy Sheriff in having the defendant's shotgun repaired (a broken trigger pin replaced) prior to the trial, and that such tampering with the evidence would foreclose a conviction. The contention is without merit. Although such tampering with the State's evidence by an officer of the law is to be condemned, that fact alone cannot be declared an error to reverse. No objection to the introduction of the evidence on the stated ground was made, and as in many other cases the trial court has a reviewable discretion as to whether such a tampering would so prejudice the defendant that the evidence in question should not be admitted.

Error is argued in the refusal of certain written charges requested by the defendant. We will discuss the ones meriting consideration.

Requested Charge No. 1, which was in effect the affirmative charge on murder in the first degree, is not worthy of discussion since defendant was not convicted of such offense.

Requested Charges 2 through 5 are all requests for the affirmative charge with hypothesis, and since there was some evidence to sustain a verdict of guilty of any one of the degrees of homicide charged in the indictment, these charges were properly refused.

Requested Charges 6 and 7 (without considering, *vel non,* their correctness) were substantially covered by the oral charge of the court and given Charge 9 on the question of reasonable doubt, and were, therefore, refused without error. Code 1940, Tit. 7, § 273; Supreme Court Rule 45, Code 1940, Tit. 7, Appendix; Hurston v. State, 235 Ala. 213, 178 So. 223; Robinson v. State, 36 Ala.App. 604, 61 So.2d 140.

Requested refused Charges 13 and 17 to the effect that if the shot that killed the deceased was accidentally fired, the jury could not convict the defendant, are

incorrect statements of the applicable law, since they ignore the evidence which tended to show that defendant, when he shot the deceased, was engaged in unlawful and inherently dangerous conduct. The charges were also faulty in that they failed to define the meaning of "accident". Of such is the import of our holding in the recent case of Jackson v. State, 265 Ala. 690, 93 So.2d 808.

These charges and others of like import were also misleading in that one may be guilty of manslaughter in the first or second degree without having any positive intent to kill. An act of violence, from which ordinarily in the course of events, death or great bodily injury may ensue, may be sufficient conduct upon which to predicate a conviction of manslaughter in the first degree. It is culpable wantonness when the accused, with the knowledge that some person is likely to be in a position of danger and with conscious disregard of such known danger recklessly proceeds on such a course which causes the disaster, although he may not know whether any person is actually in danger and has no positive intention of harming anyone. Harrington v. State, 83 Ala. 9, 3 So. 425; Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; Gills v. State, 35 Ala.App. 119, 45 So.2d 44.

Stated another way, an unintentional killing of a human being arising from a wanton or reckless use of firearms, in absence of intent to discharge the weapon under circumstances not evidencing a heart devoid of a sense of social duty, is manslaughter and may be classified as voluntary or involuntary, as the circumstances of the case dictate. Wharton's "Criminal Law and Procedure" (1957), Vol. I, § 292, pp. 614–616; Austin v. State, 145 Ala. 37, 40 So. 989; Henderson v. State, 98 Ala. 35, 13 So. 146.

Refusal of Charges 14, 15, and 16 can be rested on the general rule that the proper hypothesis for a requested charge in a criminal prosecution is rested on "be-

lief" from the evidence, and not "reasonably satisfied". Thus the refusal of a requested charge not so hypothesized does not constitute reversible error. Payne v. State, 261 Ala. 397, 74 So.2d 630; Wesson v. State, 251 Ala. 33, 36 So.2d 361.

In the course of the trial defendant's counsel asked the court to require the State to produce the murder weapon. There was no error in the court's refusal, and before the evidence was concluded, it was introduced. Supreme Court Rule 45. See also "Law of Evidence in Alabama", McElroy, § 291, p. 140; Wigmore, "Evidence", 3rd. Edition, Vol. VIII, § 2224, pp. 219–220.

The trial court was not in error in refusing to permit defense witness Venters to testify as an expert as to whether in his opinion a certain mark on the door facing of the house where the shooting occurred was made by the "gun handle" of the murder weapon or as to whether the gun could have been fired by the striking of the hammer against the door. Expert opinion evidence is not admissible on matters of such common knowledge as was sought to be elicited by these questions. Alabama Great Southern Railway Co. v. Bishop, 265 Ala. 118, 89 So.2d 738; Colvin v. State, 247 Ala. 55, 22 So.2d 548.

And we cannot say with any degree of certainty that the trial court abused its discretion in sustaining the State's objection to them. Snead v. State, 251 Ala. 624, 38 So.2d 576; Wise v. State, 251 Ala. 660, 38 So.2d 553.

It was permissible for the State to show by witness Hanson that the deceased was separated from the defendant and had filed a suit for divorce. The relations of the parties toward each other in connection with the other facts and circumstances surrounding the act, are relevant on the question of motive for the homicide. Powell v. State, 219 Ala. 557, 123 So. 34; Monteith v. State, 161 Ala. 18,.

49 So. 777; Phillips v. State, 68 Ala. 469; Gray v. State, 63 Ala. 66; Commander v. State, 60 Ala. 1; Wharton's Criminal Evidence", 12th. Edition, Vol. I, § 171, pp. 332–335.

■ It was also argued that the solicitor's numerous objections pending trial denied the defendant due process. The record does not disclose any such conduct on the part of the solicitor, or that his objections were frivolous or without good faith or for the purpose of prejudicing the defendant's case. It is not only the right, but the duty, of counsel representing either party to interpose seasonable and proper objections when thought to be meritorious.

■ We cannot pronounce error in the ruling of trial court in refusing to allow witness Hanson to answer such questions pertaining to the deceased propounded to him on cross-examination by the defendant's counsel: "When did you learn that she was a married woman?", "How long had you been going with this married woman, knowing she was a married woman?", "And now the fact is you had given her a ring and you were engaged to her?", "Hadn't you been shopping with her in LaGrange, Georgia?", "Hadn't you also been to a beer hall known as Bishop's with her?", and "As a matter of fact, weren't you going openly and flagrantly with this married woman?" It is argued by appellant that he was entitled to elicit answers to these questions in order to show bias or interest of the witness. Such testimony was not offered specifically for the stated purpose, and it is not reversible error either to admit or reject evidence offered generally when admissible for a certain purpose only, without calling attention of the trial court to such purpose. Cotney v. State, 248 Ala. 1–4, 26 So.2d 603; Archer v. Sibley, 201 Ala. 495, 78 So. 849; Western Union Telegraph Co. v. Favish, 196 Ala. 4, 71 So. 183.

■ Appellant asserts that error occurred when the court sustained the State's objection to the following question asked of Dr. Joe Liles, Coroner for Lee County and a witness for the State, after he had given expert testimony for the prosecution on direct: "As a matter of fact, isn't it your judgment, Doctor, that in considering the height of these parties as you saw them and observed them there, that in order for that shot to have ranged upward, she had to be falling so that it would have gone up—". This question related to a physical fact which was sufficiently simple that it could be readily understood by the jury when properly described. After the detailed facts have been drawn out by proper testimony, it is for the jury to draw the conclusion. This was not a matter for expert opinion evidence. Alabama Great Southern Railway Co. v. Bishop, supra; Colvin v. State, supra.

■ Error did not result by the court's sustension of the State's objection to the following question on cross-examination put by the defense to the witness Jackson: "Will you explain to this jury why it was that Alice Garrett went along with him to use the telephone up there in your own house?" The question called for an uncommunicated motive or intention by the deceased that was not admissible. Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Reeder v. State, 210 Ala. 114, 97 So. 73.

■ The trial court was not in error in refusing to permit the defendant to ask witness Jackson the following questions: "[T]he fact is that since this trouble your mind has been affected, hasn't it?", "The fact is that since this trouble, you have been in a hospital, haven't you?", "You have been, since this crime, you have been in a hospital for treatment for a nervous mental condition?" Of course it is permissible for the defendant to attack the credibility of any witness for the state within the bounds allowed by law. And this credibility of witness Jackson could thus be attacked by showing a mental derangement existing at the time of the trial. Worthington & Co. v. Mencer, 96 Ala. 310,

11 So. 72, 17 L.R.A. 407; Walker v. State, 97 Ala. 85, 12 So. 83; McKinstry v. City of Tuscaloosa, 172 Ala. 344, 54 So. 629; 26 A.L.R. 1493; Allen v. State, 60 Ala. 19. And cf. Campbell v. State, 23 Ala. 44. But questions such as these propounded by the defense, which merely tend to show a mental condition or mental treatment at a time prior to the trial, or not contemporaneous to the matter being testified about, are not admissible as impeaching the credibility of a witness. Metropolitan Life Ins. Co. v. James, 228 Ala. 383, 153 So. 759; Campbell v. State, supra. It is no objection either to the competency or credibility of a witness, that he may be subject to fits of derangement, if at the time the witness is offered it appears—and this is for the court, not the jury, to decide—that he is sane. Cases, *ubi supra*.

The case was well tried and ably defended. Consistent with our duty we have searched the record for error prejudicial to the substantial rights of the defendant and have found none.

Affirmed.

LAWSON, GOODWYN, and MERRILL, JJ., concur.