624 So.2d 1090 (1993)
William Alan WEIDLER, alias
v.
STATE.
CR 91-567.
Court of Criminal Appeals of Alabama.
March 5, 1993.
Rehearing Denied May 7, 1993.
Certiorari Denied July 23, 1993.
Douglas Jones and George Jones, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Robert Lusk, Jr., Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1921248.
*1091 BOWEN, Presiding Judge.[1]
William Alan Weidler, the appellant, was convicted of manslaughter, was fined $2,000, and was sentenced to seven years' imprisonment. He raises three issues on this direct appeal from that conviction.

I.
The appellant and Sean Dawson Brooks were separately indicted for the manslaughter of Blair Benson. The indictments were consolidated for trial and both men were convicted. The appellant argues that, as a matter of law, the principles of complicity are inconsistent with the concept of "reckless" manslaughter under the decision of the Alabama Supreme Court in Ex parte Howell, 431 So.2d 1328 (Ala.1983), and that the trial court committed reversible error in charging the jury on the law of complicity.
"A person commits the crime of manslaughter if ... he recklessly causes the death of another person." Ala.Code 1975, § 13A-6-3(a)(1). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." § 13A-2-2(3).
Howell involved a prosecution for manslaughter in which the defendant was found guilty of criminally negligent homicide. The facts in that case were that "[w]hile [a co-defendant] was showing Fuller the pistol, [the defendant] exploded some firecrackers in the house. The pistol fired and the bullet struck Fuller, resulting in his death." Howell, 431 So.2d at 1329. In holding that the defendant should not have been tried on a theory of complicity, the Alabama Supreme Court held:
"The legislature has written that criminal negligence involves a failure to `perceive a substantial and unjustifiable risk.' In contrast, an offense committed by way of complicity requires the specific `intent to promote or assist' in the commission of an offense. On the facts before us, it is clear to the Court that criminal liability based upon complicity and criminally negligent homicide are inconsistent. That is, specific intent to commit an offense is required to show complicity but is rejected by the statute on criminal negligence. Since, in this case, we find these two sections to be in conflict we hold that the conviction based on this theory is improper, and we reverse and remand this case to the Court of Criminal Appeals for proceedings consistent with this opinion."
Howell, 431 So.2d at 1330-31.
Howell holds that it is logically impossible to be an accomplice to a criminally negligent homicide. Despite dicta to the contrary in Howell, that case does not hold that it is logically or legally impossible to be an accomplice to a reckless homicide.
The rationale of Howell, that one cannot intend to promote or assist another's failure to perceive[2] a substantial risk of death, is not universally accepted, see generally 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.7(e)(1986), but it is at least understandably equitable in light of the principal actor's failure to perceive the risk.
That rationale should not be extended to reckless manslaughter, an offense in which the principal actor does perceive but consciously disregards the risk of death. It is both logically and legally consistent to impose liability on one whose conduct aids or encourages another who is aware of and who consciously disregards a substantial risk of death.
While there is language in Howell which, read broadly, could render complicity inconsistent with recklessness, that language should not be deemed to have overruled, sub silentio, a long line of authority by the Alabama *1092 Supreme Court holding that one can be an accomplice to manslaughter.
As early as 1837, our Supreme Court held:
"The man who, without any predetermined purpose, but under the influence of a momentary excitement, aids and abets his friend in an affray, in which the friend kills his adversary, is not guilty of murder, because malice, an essential constituent of the crime, is wanting; yet he is not wholly dispunishable, for aiding and abetting an unlawful homicide.
"Upon authority, it seems unquestionable that there may be aiders and abettors in manslaughter; and Russell, (1. vol. 456,) lays it down, that `in order to make an abettor to manslaughter a principal in the felony, he must be present, aiding and abetting the act committed.' This learned author is sustained by Hale. 1 vol. 438-439 & 431 et post."
State v. Coleman, 5 Port. 32, 41 (1837) (emphasis added). See also Martin v. State, 89 Ala. 115, 120, 8 So. 23, 24-25 (1890), wherein our Supreme Court held that two brothers were equally guilty of manslaughter, regardless of which brother fired the fatal shot, because
"[t]he jury w[as] not without testimony from which they could draw the inference that the two Martins had a common purpose to set the law at defiance, and to use whatever force might be necessary to accomplish their object; and that each was ready to assist and encourage the other, if assistance and encouragement should become necessary. Finding this to be so, each was accountable for the act of the other, whether such act was previously intended or not, if it grew naturally and proximately out of the unlawful purpose they had in view."
See also Ferguson v. State, 141 Ala. 20, 28, 37 So. 448, 450 (1904). "[T]he theory of the defendant ... that there cannot be aiders and abettors in manslaughter ... is contrary to the decisions of this court [citing Coleman, Martin, and Ferguson]." Morris v. State, 146 Ala. 66, 100, 41 So. 274, 284 (1906) See generally 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.7(e) (1986).
However, even if we assume that the trial court did commit error in charging the jury on the principles of complicity, that error was not prejudicial to this appellant. Any possible error in that charge was harmless in this case since the appellant was a principal, not a mere aider and abettor, in the assault which culminated in the death of the victim.

II.
The appellant argues that neither the weight nor the sufficiency of the evidence support his conviction.[3] We disagree.
"In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom." Johnson v. State, 378 So.2d 1164, 1169 (Ala.Cr.App.), cert. denied, 378 So.2d 1173 (Ala.1979). Here, the evidence presented by the State is sufficient to support the verdict of the jury.
That evidence shows that 18-year-old Blair Benson was killed at approximately 10:50 on the night of December 14, 1990, outside Gene's Jukebox, a lounge in Birmingham, Alabama. Benson was at the lounge with his friends Michael Hairston, Dax Swatek, and Mark Thompson. While these four men were sitting together, the appellant walked over to Benson and was overheard saying, "[T]his is going to be a nightmare of a night for you." R. 98-99. In addition, the appellant was overheard asking Benson "if he was one of the ones that beat up [the appellant's] brother." R. 121. Thompson testified that the appellant "just kept saying we beat his brother up." R. 387. There was testimony that the Benson and a group of Sigma Nu *1093 fraternity pledges had gone to the appellant's brother's apartment in Auburn and assaulted him. R. 121-22.
When Benson and his friends noticed that "a large group of people had formed over on the other side of the bar," they became "scared" and requested a police officer inside the bar to escort them outside to Hairston's Honda automobile which was parked across the street. When Benson, Hairston, Thompson, and Swatek got about halfway across the street, they noticed that there were about 15 or 20 people "chasing" or running toward them. The appellant and his codefendant, Sean Brooks, were in the front of this crowd. Benson and his companions ran to Hairston's car and Hairston, Thompson, and Swatek managed to get inside. Benson was apprehended by the appellant and Brooks before he could secure himself inside the car. Both the appellant and Brooks were observed hitting Benson with their fists outside the car. Benson was beaten to the ground behind Hairston's car and the appellant was overheard asking, "Have you had enough?," as he repeatedly kicked Benson in the head. R. 297. There is evidence that Benson was rendered helpless and that he was unconscious. While Benson was lying on the ground directly behind the car, "[h]e looked like he had been beaten pretty bad and he wasn't moving." R. 342.
During this time, there were a number of people "beating on the windows, kicking the car, and yelling five on one, and stuff like that" and attempting to get the three men out of the Honda. R. 393. During this time, the front windshield of the car was shattered on the passenger's side.
Thinking that Benson was inside the car and hearing his companions yelling for him to "go," Hairston drove the car in reverse and then forward in an attempt to escape the attack, and in doing so, ran over Benson. The police officer, who had made no attempt to stop the crowd from storming after Benson and his friends, made Hairston stop the car. Some members of the crowd lifted the car and Benson was removed from underneath the vehicle. Benson died "as a result of aspiration, shock, and cardiac arrest as complications of severe multiple blunt force injuries or trauma." R. 517. There was evidence that the injuries Benson sustained to his head, hands, shoulders, stomach, kidney, adrenal gland, and bowel could have been caused by a fist or foot.
In this case, there exists no "unforeseen `supervening, intervening cause sufficient to break the chain of causation.'" Pearson v. State, 601 So.2d 1119, 1126 (Ala.Cr.App. 1992). Here, there is evidence that the appellant, in an act of passionate but planned revenge, beat the victim helpless and left him on the ground behind the wheels of an automobile while a crowd of people were assaulting that automobile in an attempt to extract its three occupants. It is only reasonable to assume that under those conditions those inside the vehicle would attempt to escape by driving away. Benson's death was not merely "coincidental." Pearson, 601 So.2d at 1127.
The specific intent to take a life is not an essential element of the crime of manslaughter.
"Intent to kill is but an alternative ingredient: the same state of mind can be imputed from conduct wanton and reckless toward human life. The likelihood of another's being imperiled by the wanton conduct, no less than actual knowledge, makes for culpability, thus supplying mens rea in voluntary manslaughter."
Anderson v. State, 40 Ala.App. 509, 513, 120 So.2d 397, 400 (1959), cert. denied, 270 Ala. 575, 120 So.2d 414 (1960), reversed on other grounds, 366 U.S. 208, 81 S.Ct. 1050, 6 L.Ed.2d 233 (1961). "[O]ne may be guilty of manslaughter ... without having any positive intent to kill." Garrett v. State, 268 Ala. 299, 305, 105 So.2d 541, 545 (1958).
Clearly, the appellant's actions created a substantial and unjustifiable risk that someone could have been killed. Certainly, that consequence was reasonably foreseeable. See Shirah v. State, 555 So.2d 807, 810-11 (Ala.Cr.App.1989). Here, there is significant evidence from which the jury could have concluded and did conclude that the appellant was aware of and that he consciously disregarded a substantial and unjustifiable risk that Benson would be killed.

*1094 III.
The prosecution presented testimony that most of the people in Gene's Jukebox were under the legal drinking age and were drinking. On direct examination of a bartender employed at that lounge, defense counsel inquired about the contents a "Long Island Tea," an alcoholic drink that a prosecution witness had testified he had consumed. On cross-examination, the prosecutor established that the Long Island Tea served at Gene's Jukebox was not "as big as the Long Island Tea that you find at other restaurants." R. 613. The following then occurred:
"Q. So you're taking advantage of customers who come in Gene's not really knowing what a Long Island Tea is if they are underage drinkers who can't go to other places, you're taking advantage of them aren't you?
"MR. JONES [defense counsel]: Objection. He was not the owner of Gene's Jukebox.
"THE COURT: He said he had been trained [as a bartender].
"MR. JONES: He wasn't taking advantage, Your Honor.
"THE COURT: Overruled. Move ahead.
"Q [by the prosecutor:]. Were you getting paid to do this?
"A. Yes, sir.
"Q. You were making money off these circumstances [we]ren't you?
"A. I would have made money. I never got paid.
"Q. You were hoping to make money?
"A. Yes, sir.
"Q. Were you trained to serve five or however many ounces of strong liquor it is to 17- and 18-year-old kids?
"MR. JONES: I objectI withdraw my objection, Your Honor." R. 613-14.
On this appeal, the appellant argues that this was an improper attempt to impeach a defense witness on a collateral matter. That objection was not raised at trial. "An objection, of course, should fairly and specifically point out the particular grounds on which an alleged error occurred in order to inform the trial judge of the legal basis of the objection, thereby affording the trial judge an opportunity to reevaluate his or her initial ruling in light of the grounds alleged and to change it, if deemed necessary." Ex parte Webb, 586 So.2d 954, 957 (Ala.1991). "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR, PATTERSON, and McMILLAN, JJ., concur.
MONTIEL, J., concurs in result only with opinion.
MONTIEL, Judge, concurring in result only.
I disagree with the majority's holding that the principles of complicity are not inconsistent with the concept of reckless manslaughter.
The Supreme Court of Alabama, in a case involving criminally negligent homicide which is a lesser included offense of manslaughter, held that:
"The legislature has written that criminal negligence involves a failure to `perceive a substantial and unjustifiable risk.' In contrast, an offense committed by way of complicity requires the specific `intent to promote or assist' in the commission of an offense. On the facts before us, it is clear to the Court that criminal liability based upon complicity and criminally negligent homicide are inconsistent. That is, specific intent to commit an offense is required to show complicity but is rejected by the statute on criminal negligence."
Ex parte Howell, 431 So.2d 1328, 1330 (Ala. 1983). The offense of reckless manslaughter, as defined in § 13A-6-3(a)(1), like criminal negligence, is an offense which does not require the specific intent to commit the crime. Thus, complicity, which does require specific intent, is not consistent with a manslaughter charge. This court has held that a trial court erred when it charged the jury on the offense of attempted manslaughter. Stennet v. State, 564 So.2d 95 (Ala.Crim.App.1990.) This Court held that attempted manslaughter is not an offense in Alabama.

*1095 "(`An attempt is an intentional act. Manslaughter... is a reckless act. One may not intentionally attempt to cause the death of another human being by a reckless act.'); People v. Jackson, 49 A.D.2d 680, 370 N.Y.S.2d 739 (1975); People v. Brown, 21 A.D.2d 738, 249 N.Y.S.2d 922, 923 (1964) (`There must be an intent to commit a specific crime in order to constitute an attempt. An attempt to commit manslaughter is apparently a contradiction because the specific crime of manslaughter involves no intent and, accordingly, an intention to commit a crime whose distinguishing element is lack of intent is logically repugnant.'); ..."
Stennet, 564 So.2d at 96.
Likewise, complicity requires the specific intent to promote or assist in the commission of a crime. Manslaughter, as defined in § 13A-6-3(a)(1), Code of Alabama, 1975, is not a specific intent offense. The two statutes are inconsistent and the trial court should not have instructed the jury on the concept of complicity as defined in § 13A-2-23, Code of Alabama, 1975.
While I disagree with the majority's holding that complicity and reckless manslaughter are not incompatible terms, I agree with the majority's holding that any error which occurred was harmless because the appellant was a principal and not an aider or abettor.
NOTES
[1] This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Bowen on January 12, 1993.
[2] "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Ala.Code 1975, § 13A-2-2(4).
[3] "The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, `viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.' ... In contrast, `[t]he "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."'" Johnson v. State, 555 So.2d 818, 819-20 (Ala.Cr.App.1989) (emphasis in original). See also Pearson v. State, 601 So.2d 1119, 1124-25 (Ala.Cr.App.1992).